### PORTSMOUTH FISHERIES CO. v. JOHN L. ROPER LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1920.)

No. 1812.

1. Shipping ⬤◯42—Owner ordinarily bound to have vessel seaworthy, but not if charterer undertakes to determine seaworthiness.

As a general rule the owner of a vessel is bound to the charterer to see that she is seaworthy and suitable for the service in which she is employed; but the rule does not apply when the charterer expressly or impliedly undertakes to inspect the vessel and ascertain her seaworthiness and fitness for himself.

2. Shipping ⬤◯42—Charterer held to have undertaken to inspect dredge and determine fitness and seaworthiness.

Correspondence between the owner and charterer of a dredge held to show that the charterer took upon itself the burden of inspecting the vessel and ascertaining for itself whether it was seaworthy and suitable for the service.

3. Shipping ⬤◯54—Loss of hired dredge held due to charterer's negligence.

Where the charterer of a dredge undertook to determine its seaworthiness for itself and leaks could have been discovered by hauling the dredge out on the ways, but the charterer's agent, though knowing that mud probably attached to the hull, so as to prevent leakage would eventually fall away, made no examination, and left the dredge at anchor and unguarded, with its deck only a few inches above the water line, the sinking of the dredge was due to the charterer's negligence.

**4. Shipping ⬥⟲54—Charterer not relieved of liability for negligence because loss was not within its liability as insurer.**

Where the owner of a dredge required the charterer to insure the dredge, and the charterer replied that it did not believe it could get insurance, but would assume such responsibility itself, the fact that the loss of the vessel due to unseaworthiness was not within its liability as an insurer did not defeat its liability as charterer for the loss of the vessel by its negligence in inspection and navigation.

**5. Subrogation ⬥⟲21—Charterer of dredge not entitled to subrogation against insurer until payment by it.**

A charterer of a dredge, sued for its loss through its negligence, was not entitled to credit for the amount of outstanding insurance, as it had no right of subrogation until it paid its liability to the owner.

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Washington; Henry G. Connor, Judge.

Suit by the John L. Roper Lumber Company against the Portsmouth Fisheries Company. Decree for plaintiff (260 Fed. 1008), and defendant appeals. Affirmed.

John A. Guion, of New Bern, N. C. (Guion & Guion, of New Bern, N. C., on the brief), for appellant.

A. D. MacLean, of Washington, N. C. (W. B. Rodman, of Norfolk, Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

WOODS, Circuit Judge. The dredge Sandwich owned by libelant, Roper Lumber Company, sank on November 2, 1917, while in the possession of respondent, Portsmouth Fisheries Company. The District Court entered a decree in favor of libelant for $6,000, the value of the vessel and interest from date of the loss. Two questions are involved: What was the undertaking of the respondent with respect to the boat? Was the loss due to the negligence of the respondent's agents?

In answer to a written application of respondent to hire the dredge, libelant wrote that respondent would have to go to Bellhaven, where the boat was, and find out if it would suit; that, if it did suit respondent, the charges would be $25 a day; that respondent must insure for $6,000 against both fire and marine risk; that the boat would have to be accepted and returned in first-class condition, wear and tear excepted. On October 24th respondent replied it had sent a man to look at the dredge, and, upon his report, thought it would do the work. As to insurance respondent wrote:

"We do not believe that we can get insurance on the boat, but, if we take it, we will assume the responsibility to the amount of $6,000. However, if you have any connection that will insure it, and you will place it, we will pay the premium. We presume you can get term insurance, and in our case 30 days will more than cover the time it will be in our possession."

Libelant's answer of October 29th states that it understands respondent to accept all the conditions and—.

"if insurance of $6,000 cannot be obtained your proposition of assumption of liability of $6,000 will be substituted. Your representative to deliver your order and to sign receipt for boat being in satisfactory condition when taken."

Respondent's agent gave the following receipt:

"Received of the John L. Roper Lumber Company the suction dredge Sandwich for account of the Portsmouth Fisheries Company on their contract with the Lumber Company. Said boat being accepted as being in a satisfactory condition to us."

When Piner, respondent's agent, received the dredge it was lying on a mud bank. He made an examination of so much of the boat as was visible, including the engine and pumps, but did not examine the portion of the hull that was under water. This could have been done by hauling the boat out on the ways. Fosken, master of one of the towing tugs, warned Piner it was not safe to take her out without such examination. Piner himself testified that ordinary care required such an examination, but he did not make it because he was in a hurry. He also testified:

"You can take a leaky boat and put it on a mud bottom; it will tighten the seams, still will have no lasting power to it. It is liable to drop out any time, especially in moving the boat. Towing a boat would have a tendency to hold the seams together and hold what was in them together. After the towing stopped and the boat was anchored, it would have a tendency to open the wood."

Piner and his crew left Bellhaven with the dredge in tow at 12 o'clock m. They proceeded about 25 miles down the river and anchored at Judith's Point for the night. The stop was made because it was regarded unsafe to cross Pamlico sound at night. The dredge was examined about 7 o'clock in the evening and no evidence of a leak was discovered. No one was left on the dredge and no watch was kept. During the night the dredge sank. The pumps were in order and there is no dispute that the loss could have been prevented by their use. The deck of the vessel was in a few inches of the water line, and the wind may have driven the waves in. On the other hand, the evidence clearly shows that leaks were to be expected. The peril of the vessel from wind and leaks was obvious.

[1] The general rule is that the owner of a vessel is bound to the charterer to see that she is seaworthy and suitable for the service in which she is employed. But the rule does not apply when the charterer undertakes by contract, either express or implied, to inspect the vessel and ascertain for himself her seaworthiness and fitness. Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012; Sanford & Brooks Co. v. Columbia Dredging Co., 177 Fed. 878, 101 C. C. A. 92 (4th Circuit).

[2, 3] It is evident from the correspondence that the charterer took upon itself this burden, and from the parol evidence that, if its agent had inspected with due care, the liability of the vessel to the leaks which resulted in her loss would have been discovered. The agent of respondent was negligent in failing to haul the vessel on the ways and examine her hull when he knew that mud probably attached to the hull, so as to prevent leakage for a time, would eventually fall away in the open water. Still greater was the negligence of the re-

spondent's agent in leaving the vessel entirely unguarded, when he had reason to anticipate leaks and over wash of the sea, and when upon discovery of either the vessel could have been saved by the use of the pumps. It follows that the respondent as charterer is liable to the libelant as owner because the loss was due to the negligence of the respondent.

[4] The contract of insurance does not affect this conclusion. Assume that an insurer is not ordinarily liable for the loss of a vessel due to unseaworthiness, and that the dredge was unseaworthy, and it would follow that merely as insurer respondent would not be liable for the loss of the vessel had it been under the navigation of the libelant, the insured. But respondent was not only insurer against the perils of the sea not due to unseaworthiness, but it was also a charterer liable for the loss which was due to its own negligence in inspection and navigation. Obviously it could not escape on the ground that its liability for its own negligence as charterer was merged in its liability as insurer against the perils of the sea.

[5] The claim that libelant should be required to give credit to respondent for an outstanding policy of insurance on the dredge for $3,500 cannot be sustained. Nor did the District Judge err in denying the motion to make British & Foreign Marine Insurance Company, Limited, a party to the action. The respondent being liable to the libelant can have no right of subrogation until it has paid the liability. Ætna Life Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537. As the insurance company is not a party, we express no opinion as to the right of the respondent to subrogation after it has paid the decree against it.

Affirmed.