### DEMPSEY et al. v. DOWNING et al.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2364.

1. Shipping ⬅42—Implied warranty of seaworthiness held to attach to barges hired for storage of cargo pending repairs to ship, notwithstanding inspection of holds.

Hiring of barges for storage of cargo pending repairs to ship *held* to carry implied warranty that barges were reasonably safe and seaworthy, notwithstanding ship's representatives examined holds of barges to ascertain whether they were in clean condition.

2. Shipping ⬅58(2).

In absence of contrary showing, ship is presumed seaworthy for services undertaken.

3. Shipping ⬅42—Shipowners, wishing to avoid implied warranty of seaworthiness, should do so in plain and unequivocal terms.

Shipowners, wishing to release their vessels from liability on implied warranty of seaworthiness for service undertaken, should do so in plain and unequivocal terms.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Libel by W. E. Downing, master, bailee, and the Standard Oil Company of Brazil, owner of a certain cargo, against John J. Dempsey and others. Decree for libelants, and libelees appeal. Affirmed.

John W. Oast, Jr., of Norfolk, Va. (Oast, Kelsey & Jett, of Norfolk, Va., on the brief), for appellants.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellees.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

WADDILL, Circuit Judge. The libel in this case was filed by the appellees to recover damages to certain portions of cargo placed by appellees upon the barges Katherine Dempsey and Experiment, owned and operated by appellants, because of the alleged unseaworthiness of the barges. The case arose in this manner:

In the month of. April, 1922, the British steamship Justin, loaded with a general cargo from New York to South America, via Hampton Roads for coaling, was in collision with the Coast Guard cutter Manning in the lower Chesapeake Bay, resulting in a large hole being torn in the Justin's starboard side in No. 4 hold. In No. 5 hold, and in between-decks of No. 4 hold, was stored a large quantity of gasoline in cases, and before repairs could be made to the ship it became necessary to remove this inflammable portion of the cargo. Acting through a stevedoring company, arrangements were made, on the ship's account, with Dempsey & Sons for the hire of their two barges Katherine Dempsey and Experiment for the transfer and removal of the portion of the cargo mentioned, and the barges were thus used upon which to store the gasoline cases, and in lightering and holding the cased gasoline, and barreled oil, out of the steamship at Norfolk, Va.

The damage to the Justin permitted water to flow into No. 4 lower hold, and at one time it rose to a foot or a foot and a half in No. 4 between-decks, but above that point in No. 4 and No. 5 holds no water came into contact with the cases. The two barges were at the time of their engagement lying idle in the harbor at Norfolk. They were brought alongside and their holds examined by the ship's representative, for the purpose of ascertaining whether they were in a clean condition to take the gasoline. 16,666 cases were taken from No. 5 hold and transferred to the Dempsey, and the remainder from that hold and from No. 4 between-decks, aggregating 8,605 cases, was transferred to the Experiment. Having loaded the gasoline, the barges were towed to Hampton Roads and anchored, awaiting completion of repairs to the steamship, and on the 26th day of May the reloading began. When the hatches of the first barge were broken open for the purpose of reloading the steamship, it was discovered that a large number of the cases, aggregating 7,400 in all in both barges, which had been loaded in the barges, were in a wet and damaged condition, and all of these cases were rejected by the representative of the owner of the oil then present. Subsequently, upon the appearance of the representative of the underwriters, 5,200 of the 7,400 damaged cases were reconditioned and forwarded, leaving the remaining 2,200 cases unfit for shipment. These last cases were left in the barges and sold for approximately 50 per cent. of their value, occasioning a loss of $4,701.46. For the recovery of this amount the libel herein was filed against the barges and their owners.

The case was tried before a judge who had the advantage of an oral examination of the witnesses, upon issues joined, upon the pleadings, as to the barges' liability for the damages sued for. The court rendered its written opinion, holding that such liability existed, and that the loss was brought about because of the unseaworthiness of the barges and the failure of their owners and operators to perform the services undertaken by them within the spirit and meaning of the contract of hire. The court referred to a special master the question of the ascertainment of the amount of the damages. The special master, upon testimony submitted to him, concluded that the sum of $3,931.96 was the proper award, and his report as to the amount due was, after full consideration, approved by the court. It is from this decree that the present appeal is taken.

The merits of the appeal depend almost entirely upon the facts, as there are no legal questions of importance to be decided, having the facts definitely settled. The assignments of error mainly relate to whether the seaworthy condition of the barges was warranted. It is insisted by appellants that no warranty, express or implied, was made, that the evidence fails to sustain the commissioner's findings, respecting the amount assessed, and that the testimony relied upon was wholly insufficient to support his conclusion. It is likewise urged that the damages were so uncertain as not to be susceptible of judicial determination, and that the commission-

er improperly considered testimony that should not have been submitted to him. We can only say that there does not appear to have been any error in the action of the commissioner in considering the testimony submitted. The chief subject for consideration was whether there was an express or implied warranty of the barges' seaworthiness. From the testimony adduced, it seems to us that both the commissioner and the trial court were correct in the conclusions reached that there was such implied warranty. Certain it is that no case is made that would warrant this court in substituting its judgment for that of the commissioner and of the trial judge, who gave full and intelligent consideration to both subjects, reaching a result that in our judgment is correct. Indeed, it would be difficult to come to any other conclusion upon the testimony.

[1, 2] Assuming that there was no express warranty given as to the seaworthiness of the barges, it cannot be doubted that an implied warranty was given—that is to say, that the barge owners believed and held out to the charterers, who were procuring the barges for a special and urgent purpose, that they were in such reasonably safe, sound, and seaworthy condition as would enable them to perform satisfactorily the contract undertaken. The fact of the seaworthiness of the ships for the service undertaken is presumed in the absence of a showing to the contrary.

"Where the owner of a vessel charters her, or offers her for freight, he is bound to see that she is seaworthy and suitable for the service in which she is to be employed. If there be defects, known or not known, he is not excused. He is obliged to keep her in proper repair, unless prevented by perils of the sea or unavoidable accident. Such is the implied contract where the contrary does not appear." Work v. Leathers, 97 U. S. 379, 380 (24 L. Ed. 1012); Hubert v. Recknagel (D. C.) 13 F. 912.

"It is not shown or suggested that the contract of hiring was other than the usual one in such cases, and in the absence of special conditions or exceptions we deem it not open to doubt that it implied a warranty of the fitness of the scow for the work for which it was chartered. The rule of law is so well settled as not to need the aid of argument or citation." Arundel Sand & Gravel Co. v. Naylor & Co., 242 F. 494, 155 C. C. A. 270, an opinion of this court by Judge Knapp.

11 F.(2d)—2

"The ground of liability, in the absence of any evidence of negligence, * * * is solely the implied warranty of seaworthiness, which exists whenever and wherever there is an undertaking to carry goods for hire, in a vessel and on navigable waters. The kind of carriage here contemplated was very humble; it consisted in lying still and acting as a warehouse; but still it was carriage, in the sense of sustaining on the water, and that is enough." The Jungshoved (C. C. A.) 290 F. 733, 1923 A. M. C. 630–632.

See, also, The New York (D. C.) 93 F. at page 496; The Presque Isle (D. C.) 140 F. 202, 203, 204; The Transit, 250 F. 71, 162 C. C. A. 243; The Folmina, 29 S. Ct. 363, 212 U. S. 354, 53 L. Ed. 546, 15 Ann. Cas. 748.

Counsel insist that, under the circumstances in this case, appellants should not be held liable for damages arising from the unseaworthiness of the barges, either upon the theory of an express or an implied warranty; their position being that the barges were accepted for the desired purpose by appellees, after full inspection on the part of competent persons in their behalf, which, in effect, waived a warranty of seaworthiness of the barges. Doubtless there may be cases in which this would be true; that is, where full inspection was made by those seeking to charter the vessels, with a view of and for the purpose of learning their condition, and the alleged defects or weaknesses were either patent or were especially called to such charterers' attention by the vessel owners; but it does not appear to the court that the facts here warrant the acceptance of that doctrine. Sanford & Brooks Co. v. Columbia Dredging Co., 177 F. 878, 101 C. C. A. 92; Portsmouth Fisheries Co. v. John L. Roper Lumber Co., 269 F. 586, 588—both decisions of this court.

[3] It seems entirely clear to this court that neither party, by doing what was done in this case, meant to depart from the usual terms of a contract of hire of the barges. When shipowners contemplate the release of their vessels from liability, as affects the implied warranty of seaworthiness for the service undertaken, they should do so in plain and unequivocal terms. Upon failure in this respect, the liability arising from unseaworthiness exists, and it is only just and reasonable that this should be so.

The decision of the District Court must be affirmed.