**McALLISTER LIGHTERAGE LINE, Inc., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Scott Paper Company, Defendants.**

United States District Court
S. D. New York.
Aug. 1, 1956.

Foley & Martin, Christopher E. Heckman, New York City, for plaintiff.

Rawle & Henderson, Harrison G. Kildare, Philadelphia, Pa., and Bigham, Englar, Jones & Houston, New York City, for defendant.

REEVES, District Judge.

At the outset the defendants challenge the sufficiency of the evidence to justify the verdict of the jury. And then they say that, even if so, there were errors in the trial which warrant a new trial. These will be noticed in the course of this memorandum opinion.

Adverting to the facts: The plaintiff, toward the middle of the year 1953, entered into a maritime contract or charter party with the co-defendant Scott Paper Company. By this contract, a wooden barge, without motor power, was hired or chartered by the said Paper Company for one year at a monthly rental of $650, or a total of $7,800 for the year. It was stipulated in the contract that the barge was seaworthy, that is to say, it was fit

to carry her cargoes safely in the coastal area in which used. It was further provided that the charterer should procure insurance coverage on the barge in the sum of $20,000 in favor of plaintiff. This was done. The contract further provided that a crew for the barge should be obtained and maintained by the defendant Paper Company.

The crew consisted of one person designated as "master" or "captain." Such person was selected by the Paper Company immediately upon receiving the barge and putting it into its service. It was loaded with over 600 tons of paper wood pulp, all of which was supervised and observed by the master.

The testimony was that all wooden barges leak by seepage, and to obviate the danger of too great an accumulation of water in the hold, pumps are provided. The master of the barge, using pumps provided for that purpose, had pumped out accumulated water in the hold before it began its haul to one of the plants of the Paper Company up the Delaware River. The master knew of this leakage, and, contrary to his specific instructions, left or abandoned the barge during its towage to Chester, Pennsylvania, and undertook to observe its progress up the river from his automobile on the highway some distance away, and above the river. By the merest chance, and not by a designed inspection, the mate of the tugboat, towing the barge, observed a listing of the barge and suspected an undue accumulation of water. The barge was beached, but too late to save it from sinking and loss of the cargo.

The evidence showed that the barge had been generally well caulked in dry dock before delivery to the defendant Paper Company. In one of the bottom seams, however, those who had charge of the caulking did not put new and sound oakum in about 18 inches of the seam, as old oakum previously used for caulking was still there. It may be inferred from the testimony that, as the barge was towed up the river and against a contrary tide, the pressure of the towage and the weight of the cargo caused the old and probably defective oakum to be pressed out of the seam, and, in consequence, the leakage was increased.

The evidence before the jury was that this leakage or incursion of water into the hold of the vessel was not so great but that the pumps on board and designed for that purpose could easily have removed all the water so as to have prevented undue accumulation, and, moreover, the evidence was that the opening (being very small but easily observable) could have been repaired so as to have stopped the increased leakage. This could have been done by the master, or captain, if he had been in attendance on the barge as his specific instructions and duty required.

While the Paper Company is debarred the right to challenge the seaworthiness of the vessel, the Insurance Company, not being a party to the contract, is not thus handicapped.

Able counsel for the defendants have made an admirable statement of the facts, but urge that so far as the Insurance Company is concerned, the vessel was unseaworthy. These, with other contentions, will be noticed in the course of this memorandum opinion:

1. The question of seaworthiness would extend to a lighterage contract, as in this case, insofar as insurance is concerned. And the requisites of seaworthiness are that the vessel must be staunch and fit to meet the perils of the sea and reasonably fit for the receipt and transportation of the particular cargo, or for the performance of the particular service in the coastal area.

The testimony of the witnesses, even on the part of the defendants, justified the jury in finding that the barge or scow was seaworthy. It was entirely fit to perform the service for which it was chartered. And the small leakage could have easily been repaired, according to the undisputed evidence, and the accumulated water could have been readily pumped out of the hold.

In the case of The M. J. Woods, 2 Cir., 206 F.2d 240, loc. cit. 242, the court found

that, "the unseaworthiness of the barge when delivered to the carrier was the cause of its sinking". And the court further said, 206 F.2d loc. cit. 243, "Seaworthiness is to be tested by ability to perform the service undertaken. The T. J. Hooper, 2 Cir., 60 F.2d 737." And the court said that: "A vessel is unseaworthy unless she is reasonably fit to carry her cargo safely despite the perils to be anticipated on the voyage. Spencer Kellogg & Sons v. Buckeye S. S. Co., 6 Cir., 70 F.2d 146".

In Thomas Jordan, Inc., v. Mayronne Drilling Mud, etc., 5 Cir., 214 F.2d 410, 412, the court found that "the hole in the barge 'was the sole proximate cause of the sinking', and that it was 'not discoverable from the deck by the character of examination made   *   *   *.'"

In the instant case the increased incursion of water into the hold could have been easily discerned if the captain or master had been attentive to his duty.

█ 2. The defendant Insurance Company has raised the further question as to whether the cause of the sinking was within the provisions of the policy. The policy covered, in addition to the perils of the sea, the negligence of the master. Quite clearly and properly the jury found that the master or captain was negligent and that the sinking of the barge was due, at least in part, to such negligence. The language of the policy excusing or absolving the insurer from liability if there be "want of due diligence by the assured," would not relieve the insurance carrier. If this language constitutes an ambiguity, then, under all the authorities, the terms of the policy must be resolved or construed in favor of the assured. Neither of the defendants is entitled to judgment of the court non obstante veredicto.

█ 3. The defendants also complain against the reading in evidence by plaintiff's counsel of discovery depositions.

These depositions were taken by plaintiff and sought to elicit admissions of facts from employees of the defendants in connection with acts done by them in the performance of duties on behalf of the defendants. Clearly it was the right of the plaintiff to offer such admissions against interest from those who were authorized and empowered to make such admissions in connection with the performance of their assigned duties. Moreover, there was no controversy or dispute as to the truth of such admissions as they were subsequently confirmed by the deponents.

█ 4. The contention of the defendants that the evidence was insufficient to justify the finding of negligence on the part of the Paper Company's employees as the proximate cause of the sinking must be ruled against the defendants. The testimony was overwhelming that the master or captain of the vessel had abandoned it contrary to his specific instructions and that but for such abandonment on his part the leak could have been repaired and all of the accumulated water pumped out.

█ 5. The defendants also complain against the size of the verdict. While one witness did say that the fair market value of the barge at the time it was sunk was approximately $7,500, yet there was other evidence to the contrary. Moreover, the jury could reasonably infer that a barge that would bring a net rental of $7,800 for one year's use had a practical market value above that fixed by a witness for the defendants. There was evidence by witnesses for the defendants that to repair the barge after its foundering would cost $23,456.19. This was the value fixed by the jury. Moreover, the Insurance Company issued a policy for $20,000 after it had conducted an inquiry concerning the barge before the insurance coverage was effected.

Under the evidence there was a case for the jury and the jury found for the plaintiff. It follows that the motion for a judgment notwithstanding the verdict of the jury and for a new trial should be overruled, and it will be so ordered.