**CLARY TOWING COMPANY, Inc.,**
**Appellant,**

**v.**

**THOMAS JORDAN, INC., Appellee.**

**No. 7096.**

Court of Civil Appeals of Texas.

Beaumont.

Dec. 31, 1969.

Rehearing Denied Jan. 22, 1970.

Orgain, Bell & Tucker, Beaumont, for appellant.

Fuller, Fuller & McPherson, Port Arthur, for appellee.

PARKER, Chief Justice.

Thomas Jordan, Inc., as plaintiff sued Clary Towing Company, Inc., as defendant, for the rental and costs of repair of any damages to three barges under the terms of a barge rental contract covering barges owned by the plaintiff and designated as TJ–392, TJ–388 and TJ–389, plus interest at the rate of eight per cent per annum as called for in said contract. Trial was to a jury. After the plaintiff had rested the defendant announced that it had no evidence to offer, other than that which the court ruled to be inadmissible. The court found that there was no evidence to dispute that offered by the plaintiff, withdrew the case from the jury and rendered and entered judgment that the plaintiff have and recover of and from the defendant the sum of $5,011.41 plus interest at the rate of eight per cent per annum from September 3, 1966, until paid and for all costs of court. Clary Towing Company, Inc., has appealed and will be called "Clary" and the appellee-plaintiff will be called "Jordan."

Each barge rental contract is dated April 16, 1966, signed by Thomas Jordan, Inc. At the time the barges were chartered to Clary each barge was over ten years old with its Coast Guard safety certificate having expired. Their economic life was estimated to be from eight to sixteen years. The barges had never been rebottomed. When picked up by Clary on April 16, 1966, one was in fair condition, had been "banged up" with some repair and rust painted over in places. The other two were in "poor condition," being banged up "around the sides and headlogs, showed evidence of being handled roughly, dented and in places had been rewelded."

Clary had previously encountered Jordan's standard "seaworthiness recitation," "Responsibility-Upon-Return Provision," and "Rental-During-Repairs Requirement." On this prior occasion, the barges which Clary was chartering were in bad condition. Therefore, Clary at first refused to sign the contract because it contained the "Seaworthiness Recitation." However, after being assured by Jordan that the provision did not mean what it said but was merely inserted to satisfy "the insurance company" Clary signed the contract. Also, on the prior occasion, the "Responsibility-Upon-Return Provision" was not interpreted to

make Clary pay for repairs which Clary had to make because of the bad condition of the barges. Jordan itself—despite the provision—paid for the repairs.

In the instant suit, before they were actually picked up on April 16, 1966, Clary had a Mr. Cook inspect the barges. The report was not too favorable but the bottoms could not have been inspected without placing them in dry dock. Relying upon the statements made by Jordan on previous occasions, Clary signed the charters on April 19, 1966.

The DOLLY ANN II towed them 124 miles to Cote Blanche Bay after being picked up. They collided with nothing and were not grounded. At the end of this run, one barge started taking water from the bottom. Immediately after being delivered to the shell dredge and there loaded, all three were leaking, requiring dredge personnel to pump the barges to keep them afloat. Thereafter, trouble with leaks continued. However, no repair concern was available having dry dock facilities and they were taken to M & S Shipyard. The bottoms were not repaired by M & S Shipyard, but only to within two feet of the bottom. The plates were thin, could not be welded and holes were knocked in the metal while chipping away rust. The shipyard found no evidence of recent repairs, no sign of a recent accident or collision. Both Marshall and Sneed of the shipyard were of the opinion that the damages to the three barges were the result of the ravages of time and not of recent origin.

In keeping with the previous agreement between Jordan and Clary, "on May 26, 1966, Clary sent Jordan a $1,150.81 statement, claiming credit for all expenses of repairs, and four days barge rent for each Barge for detention during repairs. Jordan responded by issuing its Credit Memo No. 58, dated June 13, 1966, for $1,150.81."

M & S advised Clary that all three barges should be drydocked in order that the bottoms might be repaired. After three months of use thereafter, Clary returned the barges to Jordan on August 5, 1966. The reports of Mr. Orr, Jordan's Marine Surveyor, do not describe the damages as being of recent origin or in any way indicate that they occurred during the prior four-months period. There is no direct evidence that Clary was in any manner negligent in handling the barges from the time they were picked up by Clary to the time returned to Jordan.

There is the testimony of Captain Franks of Jordan that he inspected the barges after Mr. Orr's inspection, admitted he saw no fresh breaks in their plates, which were heavily coated with rust. The Captain was of the opinion, however, that the considerable damage was not the result of wear and tear and was caused by collision, accident or being dragged over something solid but did not state that such collision, accident or dragging had occurred while in Clary's hands. There is no direct evidence of any such occurrence while in Clary's hands.

Jordan placed the barges in dry dock, repaired them and billed Clary. Clary refused to pay for the repair.

Judgment was for the total amount claimed by Jordan for repairs and rentals during repairs plus interest at the rate of eight per cent per annum from September 3, 1966, until paid.

The basic law governing the charterer's responsibility for the chartered barges is stated in 80 C.J.S. Shipping § 52, p. 748:

"The charterer of a vessel without motive power ordinarily is required to return the vessel in the order and condition in which it was received, reasonable wear and tear excepted, and he is liable for any damage to the vessel resulting from his own negligence * * *. However, in the absence of express agreement, the charterer generally is liable only for negligence, and he will be made an insurer only by clear and explicit language to that effect in the charter.

"A covenant to return the vessel in the condition in which it is received, necessary or reasonable wear and tear excepted, does not render the charterer liable as an insurer, and it has been held that he is liable only for negligence; * * *."

In no case is a bailee for hire made an insurer by implication unless there is a provision in the charter by clear and implicit language that the bailee assumed an obligation to pay the bailor for damages not caused by bailee's negligence.

See 65 A.L.R.2d, page 1233:

"Generally, the courts have taken the view that the owner of a vessel or ship makes out a prima facie case of negligence by proving delivery of the vessel to the bailee in good condition and a failure to return or a return in a damaged condition, the burden then being on the bailee or charterer to produce explanatory evidence to rebut the presumption of negligence. As recognizing this view, see the following cases: * * *"

citing numerous cases including: The Raymond M. White, 290 F. 454, 456, 457 (E.D. N.Y., 1923); affirmed without opinion, 296 F. 1023 (2nd Cir., 1924); and Alpine Forwarding Co. v. Penn. R. Co., 60 F.2d 734 (2nd Cir., 1932).

In Trammel v. Whitlock, 150 Tex. 500, 242 S.W.2d 157 (1951), Justice Garwood states:

"The defendant-petitioner is correct in his contention that the burden of proof on the whole case, including the issue of negligence, is on the respondent bailor, but as stated in Wigmore on Evidence, 3rd Ed., § 2508, 'Where goods have been committed to a bailee, and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, placing on the bailee at " 'least the duty of produc-ing evidence of some other cause of loss or injury.' Without prejudice to the burden of proof being at all times on the bailor, the bailor under this latter rule makes a prima facie or presumptive case of negligence by proving the bailment and either the return of the goods by the bailee in a damaged condition, not existing at the time of their delivery to him, or a failure by him to return them at all. The rule is said to be based on the just and common sense view that the party in possession or control of an article is more likely to know and more properly charged with explaining the damage to it or disappearance of it than the bailor who entrusted it to his care. It is evidently supported by the weight of authority in the United States, including our own state. See cases collected in 8 C.J.S. Bailments § 50, n. 87; 6 Am.Jur. (Rev. Ed.), Bailments § 371, n. 17; Rhodes v. Turner, Tex.Civ.App., 171 S.W.2d 208, mandamus to certify questions refused in Rhodes v. McDonald, 141 Tex. 478, 172 S.W.2d 972; Callihan v. Montrief, Tex. Civ.App., 71 S.W.2d 564, er. ref.; Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, 736; Gilland v. Peter's Dry Cleaning Co., 195 S.C. 417, 11 S.E. 857; Thomas v. Hackney, 192 Ala. 27, 68 So. 296.

"As pointed out by Judge Learned Hand in the Alpine Forwarding Co. case, supra: 'The presumption on which the bailor may rely is a mere rule for the conduct of the trial. It puts upon the bailee the risk of a directed verdict if he does not meet it, but it does no more; once he has done so, it disappears from the case. Thus, it can never concern the jury.' See also the Gilland and Thomas cases last above cited."

In chartering these barges Clary did not become an insurer but was liable only for damages caused by its own negligence. We sustain the point of error of Clary asserting the court erred in excluding evidence which would have permitted

Clary to show that the barges had not been damaged by any negligence of Clary while under its control. Alpine Forwarding Co. v. Penn. R. Co., supra, Trammel v. Whitlock, supra, and authorities hereinbefore discussed.

■ Despite such handicap, there is sufficient evidence in the record to raise a question of fact as to whether or not there was negligence on the part of Clary and, if so, whether such negligence caused damage to the barges under charter to it; that is, it became a question of fact for the jury to determine.

Clary also contends the trial court erred in excluding evidence which would have shown the condition of the barges at the time Clary accepted them because this is a case when parol evidence is admissible to interpret the various provisions of the charters. Clary further contends the court erred in withholding the case from the jury because a jury issue was raised as to whether or not Jordan's credit memo constituted a subsequent oral modification of the seaworthiness requirement and the rental during repairs requirement set forth in the charters.

All of these contentions will be considered together.

The essential portions of the charters prepared by Jordan dated April 16, 1966, and accepted by Clary on April 19, 1966, are·

"The Charterer shall pay to THOMAS JORDAN, INC., for the use of the barge at the rate of $40 per day. The amount of charter hire accruing each month shall be paid within fifteen (15) days from the date of invoice. Interest at 8% per annum will be charged on all invoices which are not paid in accordance with the terms of this contract. In the event of default in payment of charter hire, owner may retake the vessel on two days' notice.

"The barge shall be delivered to the Charterer at HERO'S CUT, PLAQUEMINES PARISH, LA. Charterer shall inspect the barge on delivery, and Charterer's acceptance of the barge shall be conclusive evidence that barge is tight, staunch, seaworthy, clean and in good order, and is in all respects fit and proper for the service in which Charterer shall use it. Charterer shall not be entitled to make or assert any claim against THOMAS JORDAN, INC., arising out of or connected with the condition of the barge, and such delivery of the barge to the Charterer or its agents, and/or the use thereof shall constitute an acceptance by the Charterer of all of the terms and conditions of this contract. The charter period shall commence the date of this contract and shall continue until the barge is returned to THOMAS JORDAN, INC., at HERO'S CUT, PLAQUEMINES PARISH, LA., or such other place as may be agreed upon in writing by the parties at the termination of the charter period, in the same good order and condition as when received, reasonable wear and tear excepted. Charterer shall see that the barge is not subject to careless or rough usage. Charterer shall replace all missing hatch covers, and shall be responsible for the removal of all materials from the deck and hold of barge. It is understood and agreed that Charterer assumes all liability in connection with the use and operation of the barge, whether due to its condition when delivered to the Charterer, or to the condition or operation of the barge during the charter period, and further to be and remain responsible for any loss or damage sustained by the barge during the term of this charter, to the full value stated, subject to the provision relative to insurance hereinafter set forth. In the event that the barge shall sustain damage during the term of this charter, charter hire shall not cease, but on the contrary shall be paid until the termination hereof; provided, however, that in the event the barge shall become a total

loss charter hire shall cease as of the date of said loss.

"The imposition of any liens against the vessel is prohibited and the Charterer shall indemnify and hold harmless THOMAS JORDAN, INC., against any claims to liens of any nature upon the barge and against any claims or demands against THOMAS JORDAN, INC., arising out of the condition or operation of the barge during the charter period which may be asserted against THOMAS JORDAN, INC., or the barge by any person, firm or corporation or out of any act or neglect of the Charterer in relation to the barge."

The questions involved in Thomas Jordan, Inc. v. Mayronne Drilling Mud, etc., 214 F.2d 410 (5th Cir., 1954), include those that must be used to determine the instant case. In the Thomas Jordan, Inc. v. Mayroone Drilling Mud, etc., supra, it is stated in the opinion:

"The principal questions presented are whether a certain provision of the charter party negatived any implied warranty of seaworthiness, so as to preclude recovery; * * *."

In footnote 3 the court held:

"* * * that such provision does not render inadmissible testimony as to the circumstances known to both parties under which the disputed provision was inserted." (Emphasis ours.)

In such case there was a similar inspection as in ours. This court holds under such circumstances the seaworthiness provision in this case does not render inadmissible testimony as to the circumstances known to both parties with the disputed provision (seaworthiness) therein.

Further considering Thomas Jordan, Inc. v. Mayronne Drilling Mud, etc., supra, on page 412 of this opinion it is further said:

"The District Court found that the hole in the barge 'was the sole proximate cause of the sinking', and that it was 'not discoverable from the deck by the character of examination made by Mr. Myers in Mr. Cox's presence aboard the Barge TJ–318 on October 10, 1951.' The Court concluded that the charter agreement implied a warranty of seaworthiness, which was not displaced or negatived by the provision as to appellee's inspection, and that the defenses of negligent loading and imprudent jettisoning of the cargo had not been proved. Decree was accordingly entered in favor of appellee for the value of the cargo lost, plus salvage expenses.

"Appellant insists that the Court erred in permitting any recovery, since the inspection provision of the charter party either expressly negatived any warranty of seaworthiness, or estopped appellee from contending that unseaworthiness caused the loss; that, if such warranty nevertheless be implied in spite of the inspection provision, it did not extend to obvious and patent defects, such as the hole in this barge; * * *."

On page 412 and 413 in Jordan v. Mayronne, supra, Judge Rives adopted the language in Dempsey v. Downing, 11 F.2d 15, (4th Cir., 1926) as follows:

"'Counsel insist that, under the circumstances in this case, appellants should not be held liable for damages arising from the unseaworthiness of the barges, either upon the theory of an express or an implied warranty; their position being that the barges were accepted for the desired purpose by appellees, after full inspection on the part of competent persons in their behalf, which, in effect, waived a warranty of seaworthiness of the barges. Doubtless there may be cases in which this would be true; that is, where full inspection was made by those seeking to charter the vessels, with a view of and for the purpose of learning their condition, and the alleged defects or weaknesses were either patent or were

especially called to such charterers' attention by the vessel owners; but it does not appear to the court that the facts here warrant the acceptance of that doctrine. Sanford & Brooks Co. v. Columbia Dredging Co [4 Cir.], 177 F. 878, 101 C.C.A. 92; Portsmouth Fisheries Co. v. John L. Roper Lumber Co. [4 Cir.], 269 F. 586, 588—both decisions of this court.

" 'It seems entirely clear to this court that neither party, by doing what was done in this case, meant to depart from the usual terms of a contract of hire of the barges. When shipowners contemplate the release of their vessels from liability, as affects the implied warranty of seaworthiness for the service undertaken, they should do so in plain and unequivocal terms. Upon failure in this respect, the liability arising from unseaworthiness exists, and it is only just and reasonable that this should be so.' 11 F. 2d at page 17."

The seaworthiness provision in the Thomas Jordan, Inc. v. Mayronne Drilling Mud, etc., supra, case is as follows:

"It is understood that the Charterer has had the Barge inspected and found same to be in first-class condition."

The seaworthiness provision in that case and in the instant case are not substantially different. The damages repaired by Jordan in the instant case were required because of leaks from the bottoms and two feet above the bottoms of the barges. To be clear and explicit Jordan could have provided that Clary had to pay the repairs entirely due to reasonable wear and tear and the ravages of time. This it did not do.

All of Clary's points of error are sustained.

Reversed and remanded, with all costs adjudged against Jordan.