877 F.2d 1404
 1989 A.M.C. 1896
 DANT & RUSSELL, INC., a corporation; Fireman's Fund
Insurance Company, a corporation, Plaintiffs-Appellees,
v.
DILLINGHAM TUG & BARGE CORP., dba Hawaiian Tug & Barge Co.;
The TUG MIKIONA, a vessel, in rem; et al., Defendants,
and
Pacific Hawaiian Lines, a corporation; The BARGE NORTON
SOUND, in rem, Defendants-Appellants.
DANT & RUSSELL, INC., a corporation; and Fireman's Fund
Insurance Company, a corporation, Plaintiffs-Appellants,
v.
DILLINGHAM TUG & BARGE CORP., dba Hawaiian Tug and Barge
Company; the TUG MIKIONA, a vessel, in rem; Pacific
Hawaiian Lines, a corporation; the BARGE NORTON SOUND, in
rem; Dillingham Ship Repair, Portland, Oregon, Defendants-Appellees.
 Nos. 86-4236, 86-4244.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1988.
Decided June 16, 1989.
 
 Paul N. Wonacott, Wood Tatum Mosser Brooke & Landis, Portland, Or., for plaintiffs/appellees/cross-appellants Dant & Russell and Fireman's Fund.
 Alex L. Parks and William P. Horton, Parks, Allen, Livingston & Greif, Portland, Or., for defendant/appellant/cross-appellee Pacific Hawaiian Lines.
 Appeal from the United States District Court for the District of Oregon.
 Before SKOPIL, HALL and O'SCANNLAIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 We are presented with the maritime law question of whether a vessel owner is liable to a cargo owner for damages in the absence of privity. We reverse the district court's finding that the vessel owner was negligent and its further finding that the vessel owner breached a warranty of seaworthiness. As a result, the district court's determination of damages owed by Pacific to Fireman's Fund cannot stand. We remand to the district court the issue of the barge's in rem liability to Dant & Russell.
 
 FACTS
 
 2
 In December 1981, appellant Pacific Hawaiian ("Pacific"), owner of the Barge NORTON SOUND, demise chartered the barge to Hvide Marine Transport, Inc. ("Hvide"). As demise charterer, Hvide assumed possession, control, and "temporary ownership" of the barge. Hvide then voyage chartered the barge to Terminal Steamship Co. ("Terminal"), a wholly-owned subsidiary of appellee Dant & Russell ("D & R"), to carry D & R's lumber from Astoria, Oregon to Florida. As voyage charterer, Terminal obtained the use of the barge for carriage, but responsibility and control remained with Hvide.
 
 
 3
 D & R insured the lumber with appellee Fireman's Fund Insurance Co. ("Fireman's Fund"). By endorsement, the policy named Hvide as an additional assured with waiver of subrogation. Hvide also added an endorsement to its own Protection and Indemnity ("P & I") policy to extend coverage to the barge during the voyage.
 
 
 4
 In accord with the terms of the demise charter which called for various inspections and surveys, the NORTON SOUND was dry-docked at Dillingham Ship Repair ("DSR") on Swan Island in Portland, Oregon, for repairs necessary to meet inspection standards. Pacific retained Hughes to consult with and assist Bartholomew, Hvide's representative at DSR. Bartholomew acted as port engineer and was authorized by Hvide to direct the repairs.
 
 
 5
 Both Hughes and Bartholomew knew that on previous voyages, a portable pump had been needed to suction water out of the cargo hold of the barge, and that major parts of the barge's bilge and ballast system did not work.
 
 
 6
 DSR tested the system, recommended substantial repairs, and gave Bartholomew and Hughes an estimate for the work. Bartholomew and Hughes then agreed, in a letter signed by Tennant, a Pacific vice-president, and by Santos, a vice-president of Hvide, to defer repairs until after the voyage.
 
 
 7
 The tug crew loaded and stowed the cargo of lumber under Hughes' instruction. Bartholomew then helped to ballast the barge, and the barge left Astoria. During the voyage, ballast water leaked through the ballast lines and into void tanks in the cargo hold. This caused the barge to list so that water washed over the open afterdeck and entered the deckhouse.
 
 
 8
 When the cargo was unloaded in Florida, ten to fifteen percent of the lumber was stained by water, oil, rust, and debris. Fireman's Fund paid D & R $169,981.23 under the policy. D & R absorbed the $25,000 deductible under the policy.
 
 
 9
 Litigation ensued between Hvide and D & R: Hvide sought to recover its voyage charter hire and D & R sought to recover for the cargo damage. That litigation ended with a settlement agreement under which, inter alia, the claims of each were waived and released.
 
 
 10
 D & R and Fireman's Fund then filed this action against Pacific and the barge. Upon motion, the trial court dismissed the barge in rem.
 
 
 11
 At trial, Pacific stipulated that the barge was unseaworthy when she left Portland, but contended as barge owner, it had exercised due diligence to make the barge seaworthy and that it did not know, or should it have known as a matter of law, of the unseaworthiness.
 
 
 12
 The district court entered summary judgment against Pacific for breach of warranty of seaworthiness. After trial on the issues of negligence and damages, the district court also found Pacific negligent and assessed damages. It held that Pacific was not relieved of liability by virtue of various indemnity and hold harmless agreements in the charters and the insurance policies. Pacific now appeals the district court's findings; D & R cross-appeals the dismissal of the barge and the district court's calculation of damages.
 
 
 13
 The parties agree there is no dispute of material fact. This court, therefore, reviews de novo the district court's application of law to facts. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986).
 
 DISCUSSION
 
 14
 * The district court found that Hughes and Tennant were negligent for failing to have the bilge and ballast system repaired before the voyage when they knew or should have known the barge was unseaworthy. Since they were acting as agents of Pacific, their actions were imputed to Pacific. W.R. Grace & Co. v. Western U.S. Indus., Inc., 608 F.2d 1214, 1218 (9th Cir.1979), cert. denied, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980).
 
 
 15
 Pacific contests the finding of liability, saying that it owed no duty to D & R. It argues that scant precedent exists for holding a vessel owner liable to a cargo owner for negligent conduct predating a chain of charters.
 
 
 16
 Generally, during a demise charter, the vessel owner surrenders possession and control of the vessel to the charterer, who succeeds to most of the owner's rights and obligations and becomes the owner pro hac vice, i.e., for the term of the charter. Reed v. S.S. YAKA, 373 U.S. 410, 412-13, 83 S.Ct. 1349, 1351-52, 10 L.Ed.2d 448 (1963). Once the demise charter is perfected, the owner is relieved of its obligations for the term of the charter; liability for the contracts and torts of the master, crew and vessel falls upon the charterer and upon the vessel in rem. Id.; Agrico Chem. Co. v. M/V BEN W. MARTIN, 664 F.2d 85, 91 (5th Cir.1981). Thus, Hvide, the demise charterer, bears the owner's responsibility for events aboard the NORTON SOUND during the charter term. In short, Hvide decided to gamble that the barge would safely transport the lumber, and it lost. Pacific had no duty to pay the cost of Hvide's wager.
 
 
 17
 Therefore, the finding of negligence against Pacific is reversed.
 
 II
 
 18
 The district court also found that Pacific had violated the warranty of seaworthiness. Pacific, however, claims waiver and points out that the warranty of seaworthiness is waived "where full inspection was made by those seeking to charter the vessels ... and the alleged defects or weaknesses were either patent or were especially called to such charterers' attention by the vessel owners." Thomas Jordan, Inc. v. Mayronne Drilling Mud, Chem. & Eng'g Serv., 214 F.2d 410, 413 (5th Cir.1954) (quoting Dempsey v. Downing, 11 F.2d 15, 17 (4th Cir.1926)).
 
 
 19
 Here, Hvide, the demise charterer, supervised the inspection and took an active part in the repairs. Hvide had full knowledge of the vessel's unseaworthiness and assumed all risks. In similar cases, owners have been absolved of liability. See id.; Nat G. Harrison Overseas Corp. v. American Tug Titan, 516 F.2d 89, 96 (5th Cir.) (owner is not responsible for conditions which demise charter could have ascertained by reasonable inspection), modified on other grounds, 520 F.2d 1104 (5th Cir.1975). Hvide's conduct constitutes waiver of any warranty claims against Pacific.
 
 
 20
 Pacific cannot be held liable under a warranty theory for a second reason. The owner and the voyage charterer are not in privity and the owner does not owe a duty to the voyage charterer. Martin v. Walk, Haydel & Assocs., Inc., 742 F.2d 246, 249 (5th Cir.1984) (since no demise charter, owner was held liable for unseaworthiness); Kerr-McGee Corp. v. Law, 479 F.2d 61, 63 (4th Cir.1973) (demise charterer liable for seaworthiness); Uni-Petrol Gesellschaft Fur Mineraloel Produkte M.B.H. v. M/T Lotus Maru, 615 F.Supp. 78, 81 (S.D.N.Y.1985). " 'An owner who has demised his ship is not indeed liable to anyone but the demisee under his warranty of seaworthiness for any loss or injury suffered during the demise. Such liabilities sound in contract and he has not made any contract with anyone else.' " M/T/ Lotus Maru, 615 F.Supp. at 81 (quoting Cannella v. Lykes Bros. S.S. Co., 174 F.2d 794, 796 (2d Cir.), cert. denied, 338 U.S. 859, 70 S.Ct. 102, 94 L.Ed. 526 (1949)).
 
 
 21
 The finding that Pacific was liable for breach of warranty must, therefore, also be reversed.
 
 III
 
 22
 In their cross-appeal, D & R and Fireman's Fund argue that the district court improperly dismissed the NORTON SOUND from this action.
 
 
 23
 The original complaint was filed against the barge in rem as well as against Pacific in personam. Such a claim attempts to recover from Pacific's property if D & R cannot recover from Pacific personally. D & R's and Fireman's Fund's claim relies on the venerable dictum of The Barnstable, 181 U.S. 464, 467, 21 S.Ct. 684, 685, 45 L.Ed. 954 (1901), which held that "the law in this country is well settled, that the ship itself is to be treated in some sense as a principal, and as personally liable for the negligence of anyone who is lawfully in possession of her, whether as owner or charterer." See Gilmore & Black, The Law of Admiralty, 600 (2d ed. 1975).
 
 
 24
 By order, the district court held that a waiver of subrogation by Fireman's Fund to D & R also applied to the barge. The waiver clause provided that:
 
 
 25
 no right of subrogation ... shall lie against any craft belonging in part or on [sic] whole to the Assured or a subsidiary and/or affiliated company of the Assured. This clause, however, does not extend to exclude recoveries that may be had under Protection and Indemnity Insurance.
 
 
 26
 An endorsement to the policy named Hvide as an additional assured, and waived Fireman's Fund's rights of subrogation against Hvide.
 
 
 27
 The district court reasoned that the barge was a "craft belonging" to Hvide under D & R's policy because a demise charterer is generally treated as the owner of the chartered vessel pro hac vice. See, e.g., Marr Enters. v. Lewis Refrig. Co., 556 F.2d 951, 957-58 (9th Cir.1977). It therefore dismissed the barge as a defendant because D & R's policy with Fireman's Fund excluded rights of subrogation against vessels "belonging ... to the Assured."
 
 
 28
 However, the district court failed to note that this release did not operate against D & R, but only against Fireman's Fund. Therefore, with regard to the $25,000 deductible on the insurance policy, this clause is inoperative and does not prevent D & R's cross claim.
 
 
 29
 Fireman's Fund further argues that the exclusion in the policy with regard to protection and indemnity insurance should preclude the dismissal of the barge in rem. We are not persuaded that the exclusion precludes dismissal of the barge. At most, it allows Fireman's Fund to make a claim in personam against Hvide only if Hvide has protection and indemnity insurance. It does not give Fireman's Fund the right to make a claim against the barge in rem.
 
 
 30
 Fireman's Fund makes the further argument that even if the waiver of subrogation might have protected the NORTON SOUND, Hvide's non-disclosure of the unseaworthiness of the barge was a breach of good faith. Such a breach makes Hvide's coverage under the policy voidable. However, Hvide's breach of good faith should not be imputed to the barge which became a third party beneficiary by virtue of the waiver of subrogation. See Everglades Marina, Inc. v. American Eastern Dev. Corp., 374 So.2d 517 (Fla.1979). Therefore, Fireman's Fund's claims against the NORTON SOUND, in rem, were properly dismissed.
 
 
 31
 Finally, D & R's claim for $25,000 may also be untenable. As Pacific notes, paragraph 21 of the voyage charter between Hvide and D & R provides:
 
 
 32
 All privileges, rights, exemptions and defenses provided for the benefit of Owner herein ["Owner" being defined in this policy as Hvide] shall be equally available to and for the benefit of every vessel used in the transportation, including the named tug and any substitute tug, as well as the owners, operators, officers and crews thereof.
 
 
 33
 Thus, Pacific can claim any defenses for the barge that Hvide could claim for itself. If the settlement agreement in Florida between Hvide and D & R released Hvide from all liability, it will also have released the barge. We remand this issue to the district court to determine if D & R is barred from asserting any cause of action against Hvide because of the settlement. If so, this is fatal to D & R's claim against the barge.
 
 CONCLUSION
 
 34
 Since we have found that Pacific neither was negligent nor breached a warranty of the barge's seaworthiness, we reverse the district court's findings on those issues and thereby reverse its finding on damages. We affirm the district court's dismissal of the barge in rem with regard to Fireman's Fund, but not with regard to D & R. We remand the issue of the barge's in rem liability to D & R to the district court.
 
 
 35
 Each side to bear its own costs.
 
 
 36
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 37
 CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and dissenting in part.
 
 
 38
 I concur in sections I and II of the majority opinion. I cannot join the part of section III, however, that holds Fireman's Fund has waived its right of subrogation against the barge. I would remand to the district court Fireman's Fund's claim that its waiver of its right to subrogation against the barge is inoperable.
 
 
 39
 The opinion acknowledges that pursuant to The Barnstable, 181 U.S. 464, 467, 21 S.Ct. 684, 685, 45 L.Ed. 954 (1901), Fireman's Fund has a valid in rem action unless shown to have been waived. The opinion, however, rejects Fireman's Fund's argument that the source of its waiver is ineffectual because the waiver was procured by fraud. Fireman's Fund did not endorse Hvide as an assured until the vessel was five days into its journey. By this time, Fireman's Fund argues that Hvide was well-aware of the serious problems on board, but nonetheless failed to disclose the vessel's unseaworthiness.
 
 
 40
 The opinion concedes that Hvide had a duty to disclose to Fireman's Fund the vessel's unseaworthiness, and that Hvide may very well have breached this obligation. As Fireman's Fund correctly points out in its brief, this court held in Pacific Queen Fisheries v. Symes, 307 F.2d 700 (9th Cir.1962), cert. denied, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963), that a maritime insurance contract is voidable where the insured fails to disclose a material fact that increases the risk. This may be just such a case, but the opinion concludes that the barge should benefit from the alleged fraudulent waiver.
 
 
 41
 Pursuant to our Pacific Queen decision, Fireman's Fund cannot be bound by a clause in a contract induced by fraud.[1] The general rule is that Fireman's Fund may sue the vessel unless it has waived that right. Fireman's Fund's argument is merely that the waiver is inoperable and thus its in rem claim valid. In other words, Fireman's Fund raises fraud as a rebuttal to Pacific's defense that the in rem claim is waived. The opinion allows Pacific to use the contract as a shield, while tying Fireman's Fund's hands to motion that the shield is a fraud.
 
 
 
 [1]
 The majority's citation to the Florida Supreme Court decision in Everglades Marina, Inc. v. American Eastern Dev. Corp., 374 So.2d 517 (Fla.1979), is unavailing. In Everglades Marina, the owner of a marina intentionally set it afire and destroyed both the marina and many vessels. The vessel owners filed claims with their insurers, which then brought a subrogation action against the marina's insurer. The marina's insurer defended this action on the grounds that it would not have to pay a claim filed by the insured because of the insured's intentional criminal misconduct. The Everglades Marina court held that the public policy prohibiting the recovery by an insured through criminal misconduct did not bar an action by third party beneficiaries of the insurance contract with no connection to the misconduct
 The majority apparently reasons that it is generally appropriate to distinguish between the rights of an insured and third party beneficiaries where the latter is not alleged to have been involved in the misconduct. "Hvide's breach of good faith should not be imputed to the barge which became a third party beneficiary by virtue of the waiver of subrogation." Opinion at 1408. The barge in the instant case, however, is hardly the innocent the majority paints it to be. "[T]he ship itself is to be treated in some sense as a principle, and as personally liable for the negligence of any one who is lawfully in possession of her, whether as owner or charterer." The Barnstable, 181 U.S. at 467, 21 S.Ct. at 685. As Hvide's principal, therefore, the barge must answer for Hvide's misconduct.