**TEXAS WESTERN FINANCIAL COR-PORATION, Appellant,**

v.

**IDEAL BUILDERS HARDWARE COM-PANY, Appellee.**

**No. 623.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 14, 1972.*

---

* Original opinion and opinion on motion for rehearing ordered withdrawn, and substitute opinion delivered and filed on second motion for rehearing June 14, 1972.

Robert C. Maley, Jr., Stephen P. Bender, Sheinfeld, Maley & Kay, Houston, for appellant.

Irving C. Stern, Gerald S. Gordon, Strickland & Gordon, Houston, Marvin S. Sloman, Robert H. Mow, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, Edward G. Murr, Houston, for appellee.

On Second Motion for Rehearing

BARRON, Justice.

Our original opinion in this case and our opinion on motion for rehearing are with-

drawn, and the following is substituted in lieu thereof:

This is a suit for recovery of lease payments or rentals brought by plaintiff, Texas Western Financial Corporation, against defendant, Ideal Builders Hardware Company, in the District Court of Harris County, Texas, under an alleged lease agreement dated June 2, 1966. Under the terms of said agreement, defendant agreed to "lease" personal property or equipment, specifically one SCM # 7816 Typetronic System Computing Processor and deluxe typetronic desk, accessories and related property from plaintiff as owner for a term of sixty months, the total rental and consideration being $19,615.20, payable in monthly installments of $326.92. In addition, a maintenance agreement was entered into whereby the sum of $67.09 was paid monthly by defendant in addition to the above consideration for ordinary maintenance of the equipment during the term of said lease. Apparently the maintenance money was deposited into a special fund to be used in payment to SCM Corporation, apparently the manufacturer of the equipment, for the maintenance on this computer system. It was contemplated by the parties that some ordinary maintenance would be necessary for this type of business equipment. Control Data Corporation purchased certain assets of SCM Corporation, and on July 11, 1968, replaced SCM under its alleged maintenance contract with defendant. Both latter corporations above were brought in as defendants in this case by defendant, Ideal, who alleged, among other things, that neither corporation properly maintained the equipment.

The above described equipment was delivered by plaintiff to defendant, and defendant commenced payment of the rentals on July 13, 1966. Defendant continued to make such payments until the last one received by plaintiff from it on September 19, 1968. No payments have been made since that date. The alleged total of unpaid lease payments due and owing under the "lease agreement" was $10,788.36 at the time of trial. However, commencing about the month of August, 1968, no substantial maintenance was received, the equipment proved to be worthless or practically worthless to defendant, and defendant tendered such equipment back to plaintiff, who refused to receive it.

After a hearing before the court without a jury, the court entered judgment in favor of defendant, Ideal, and the court rendered take-nothing judgments against Ideal and in favor of SCM and Control Data. No appeal has been perfected from judgments in favor of SCM and Control Data. Texas Western, plaintiff below, has duly perfected this appeal against Ideal Builders Hardware Company.

The trial court found, on request, that maintenance duties of SCM were assumed by Control Data about July 11, 1968; that the equipment was not maintained for about one year prior to Control Data's assumption of such obligations; that with aid from another source, a part of the leased equipment was used by Ideal through the year 1968, and that the remainder of the equipment was not usable; Texas Western took no action to mitigate its damages, repossess the equipment, lease the equipment to another, demand possession of same, or sell it. The trial court concluded that Texas Western is not entitled to recover anything from Ideal, and that Ideal is not entitled to recover from SCM, Control Data or Texas Western. A cross-action had been filed by Ideal against SCM, Control Data and Texas Western seeking cancellation of the contract, refund of all money paid to the parties, and alleged usurious interest paid.

Appellant, Texas Western, contends that the trial court erred because the lease agreement entitles appellant to its unpaid lease payments as alleged, plus interest and attorney's fees in the amount of $1,168.25; because of the holding that appellant was required to plead and prove mitigation of damages; and in failing to hold that appellee breached the lease agreement.

■ We believe that all parties and the trial court have treated this matter as one involving a conventional lease contract and one which might apply to real property, and that decisions applying to a lease of realty partly have been permitted to control this case. However, as we view it, the transaction is nothing more or less than a bailment for hire or for mutual benefit of Texas Western and Ideal under a written contract. We believe that the law governing bailments should generally apply.

■ There may be evidence in the record, though presently insufficient, particularly from witnesses McCann and Kay, that while maintenance failed under the contract agreed upon which Texas Western either assigned or passed on to SCM Corporation, though the payments were mailed by Ideal to Texas Western by agreement, the equipment was basically and seriously defective from the beginning and as delivered. Inferences from the testimony could show that the machines were inherently and originally defective, at least in part, and that they could not properly be remedied or repaired under the ordinary maintenance contract. McCann testified that neither SCM nor Control Data could fix the machines, and that the witness did not know what they could have done with the equipment. The fact that defects appeared some time after use is not controlling as a matter of law.

The small-printed "lease" contract in evidence which is almost illegible provides that "Lessee agrees that the maintenance service, if any, to be performed, is the sole obligation of the *supplier* of the equipment" and that "Lessor itself makes no express or implied warranties as to any matter whatsoever." Who the "supplier" was we cannot clearly determine from the record. Further, the written agreement provides that all future rentals shall become immediately due and payable on any default, *regardless of use or passage of* time, and appellant actually did attempt to accelerate future rentals and declare them immediately due and payable. However, the necessary time had elapsed before trial of this case occurred and rentals were earned and unpaid at time of trial under the contract. The contract is replete with indemnity agreements, waivers, and other provisions which attempt to insulate appellant from any liability whatsoever and practically to fix appellant's sole obligation as delivery to appellee of personal property of the above description *in good repair* without further liability. Apparently appellant intended to receive monthly payments as specified without any further obligation whatsoever.

■ As a general rule, the bailee "is not liable if the subject-matter of the bailment has been injured by some internal decay, by accident, or by some other means wholly without his fault; and, in the absence of some special stipulation, an injury to or loss of the property falls on the bailor." See Williamson v. Phillipoff, 66 Fla. 549, 64 So. 269, 271 (1914). And see Tuloma Rigging, Inc. v. Barge & Crane Rentals, Etc., 460 S.W.2d 510, 513 (Tex.Civ. App.-Houston (14th Dist.) 1970, no writ). We believe the evidence could show or raise fact issues that the injury or damage to the property was inherent or of a basic or extraordinary nature, involving extraordinary expenses, and that the damage amounts to more than the requirement of mere maintenance. If such is so, if the property was defective or was so latently fragile at the time of delivery that the anticipated use thereof was likely to cause the equipment to become useless and defective later, and if findings are so made upon sufficient evidence, such findings might control the disposition of this case.[1] Disclaimer of contractual warranty, we believe, does not change the rule. See and compare Clary Towing Company v. Thomas Jordan, Inc., 449 S.W.2d 306, 309–310 (Tex.Civ.App.-Beaumont 1969, writ ref'd

---

1. See Sharp v. Chrysler Corporation, 432 S.W.2d 131, 136 (Tex.Civ.App.-Houston (14th Dist.) 1968, writ ref'd n. r. e.) for a different application of the rule.

n. r. e.). We believe this case is distinguishable from McKenzie Equipment Co. v. Hess Oil & Chemical Corporation, 451 S.W.2d 230 (Tex.Sup.1970) by reason of the possible presence of some evidence of original defectiveness of the equipment and this bailor's agreement to deliver the property in good repair. See also 8 Am.Jur. 2d Bailments Secs. 144 and 160 (1963); 8 C.J. S. Bailments § 24, p. 380 (1962). Such evidence, however, has not been properly developed. The equipment was to be delivered to bailee in good repair, and that provision will be given preference over a related general disclaimer of warranty. A bailee's liability will not be enlarged by words of doubtful meaning. Sanchez v. Blumberg, 176 S.W. 904 (Tex.Civ.App.-San Antonio 1915, no writ).

■ As we stated above, the lease creating the bailment for hire in this case was in writing, and its terms were severe against the bailee-appellee. In McKenzie Equipment Co. v. Hess Oil & Chemical Corporation, supra, it was held that the common law liability of a bailee to a bailor for loss or damage to the bailed property is limited to fault or negligence on the part of bailee, but liability may be enlarged to place a greater risk upon a bailee by agreement of the parties. Such is what the written contract definitely did here. McKenzie Equipment Co. went on to hold that an agreement between the parties placing full responsibility and liability for damages due to fire or for any causes other than ordinary wear and tear on the lessee or bailee, was effective to hold the bailee liable for fire damage regardless of fault. In the present case, the contract in more severe terms provides that "8. Lessee assumes the entire risk of loss from hazard and no such loss shall relieve Lessee of its obligations hereunder . . .". Such provision is similar to that contained in the agreement in McKenzie, supra. The terms, while not as specific, have clearly the same meaning. We cannot ignore such provision of the agreement.

While the maintenance money was paid directly to Texas Western, who either passed it on to SCM and its successor, acted as maintenance agent for Ideal with full responsibility, or was merely aiding Ideal in payment of a separate contract between Ideal and SCM, the answer is not clear. The purported agreements are illegible in the record. In the present state of this record, we cannot say that Texas Western is liable for failure to maintain the equipment, or have it maintained.

■ Expert testimony may be required to prove certain elements of this case including the original condition of the leased property. Authorities cited in the respective briefs of the parties, we think, are not generally in point. Failure or partial failure of consideration was not found or properly preserved. We are convinced that the controlling issues of fact were not found by the trial court upon which we could base a judgment with fairness to either party. Where findings of fact are filed by the trial court, the judgment cannot be supported on appeal by presuming a finding, no element of which was found by the trial court. Rule 299, Tex.R.Civ.P.; McKenzie v. Carte, 385 S.W.2d 520, 529 (Tex.Civ.App.-Corpus Christi 1964, writ ref'd n. r. e.). Findings of fact have not been made upon controlling issues or defenses as required in this case. Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627, 634 (1957); Carruth v. Valley Ready-Mix Concrete Co., 221 S.W.2d 584, 594 (Tex. Civ.App.-Eastland 1949, writ ref'd).

■■ Cases cited principally by appellee, while appearing to be close in some respects, are distinguishable in view of this particular written contract of lease or bailment. For instance, appellant's attempted acceleration of all future rent when appellee stopped payment is not now enforced by us as a penalty under the rule of Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484 (1952). This is because appellant refused to receive the property when tendered

(which it had the right to do), the rental had been earned at the time of trial, and appellee after discontinuing payment failed to tender any type of payment thereafter. Moreover, the trial court having found facts, after proper request, failed to find any facts in this regard. The above phase of this case needs further development and may constitute controlling issues for a court or a jury on another trial. And we find that under the printed rental or bailment contract the appellant is not required to mitigate any damages. The case cited by appellee, Walker v. Salt Flat Water Co., 128 Tex. 140, 96 S.W.2d 231 (1936), and similar authority, are not here in point. Without other sufficiently proven defenses to the rigidly written contract, it was not incumbent upon appellant to repossess or take possession of the leased property and thereby terminate the obligations of the contract, under the very terms of the agreement executed by both parties. These were optional rights of appellant, and they were not required to be invoked except at appellant's choice.

Except as stated above, in the absence of total or partial failure of consideration or proof that the equipment was originally defective as delivered by appellant, or that the probability was at such time that the equipment was fragile and would become defective or useless during the term of the contract, as stated above, no effective defense to the agreement has been shown or found by the court on sufficient evidence.

■ We think the case was tried upon the wrong theory, and that the evidence and findings are insufficient to support the judgment below. We so hold. London Terrace v. McAlister, 142 Tex. 608, 180 S.W.2d 619, 620–621 (Tex.Comm'n App.1944, opinion adopted). And see Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 798–799 (Tex.Sup.1951); Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178 (Tex.Comm'n App.1937, opinion adopted); West Texas Equipment Company v. Walker, 417 S.W.2d 864, 870 (Tex.Civ.App.-Amarillo 1967, writ ref'd n. r. e.); Rule 434,

Tex.R.Civ.P. A miscarriage of justice, we believe, would occur under the law if this case were not remanded for a new trial.

Reversed and remanded.