Warren McCOLLUM, Appellant,

v.

Orvil SMITH and Chan C. Wilson, doing business as S & W Equipment Rentals, a partnership, Appellees.

No. 18921.

United States Court of Appeals Ninth Circuit.

Nov. 25, 1964.

Rehearing Denied Jan. 4, 1965.

Browning, Circuit Judge, dissented.

Frank D. Padgett, Robertson, Castle & Anthony, Honolulu, Hawaii, for appellant.

A. Singleton Cagle, William L. Fleming, Smith, Wild, Beebe & Cades, Honolulu, Hawaii, for appellees.

Before CHAMBERS, KOELSCH and BROWNING, Circuit Judges.

KOELSCH, Circuit Judge.

In this suit to recover damages for personal injuries, the district court directed a verdict against the plaintiff and he has appealed. His assignments of error all concern the validity of that ruling.

Plaintiff based his claim on negligence. His complaint was in two counts. In one he charged that the defendants were responsible under the doctrine of respondeat superior for the negligent operation of a crane by their employee, Ed Choy; and in the other, he charged under an exception to the fellow servant rule that the defendants were themselves negligent in employing Choy, whom he alleged was an incompetent operator.[1]

"Although stated in varying ways at different times, the question a trial court must answer in deciding whether to direct a verdict (for the defendant) is 'whether the evidence in its entirety would rationally support a verdict for the plaintiff, assuming that the jury took, as it would be entitled to take, a view of the evidence most favorable to the plaintiff.'" Phipps v. N. V. Nederlandsche Amerikaansche Stoomvart, Maats, 259 F.2d 143, 145 (9th Cir. 1958), quoting Justice Frankfurter concurring in Wilkerson v. McCarthy, 336 U.S. 53, 65, 69 S.Ct. 413, 93 L.Ed. 497 (1958). And this court, in common with other appellate courts, applies the same

---

1. The fellow servant doctrine, which exempts an employer from liability for injuries to a fellow employee by the negligence of a co-employee, is subject to an exception if an employer knows or is chargeable with notice of the fact that the tort feasor is likely to be careless in performing the service in which he is engaged. The employer being duty bound to provide his employees with safe instrumentalities and surroundings, his selection or retention of a notoriously careless employee constitutes actionable negligence on the part of the employer, should the co-worker negligently injure one of his fellow workmen.

test when reviewing a district court order. Sherwood & Roberts-Kennewick, Inc. v. St. Paul Fire & Marine Insurance Co., 322 F.2d 70 (9th Cir. 1963).

In this case the evidence disclosed that Concrete Engineering Company (Concrete) had entered into a subcontract with the construction firm of Haas & Haynie to manufacture and erect the framework for a four-story parking garage in Honolulu. The structural components of the frame were to consist of prefabricated concrete beams, joists and soffits of a type manufactured by Concrete at its plant.[2] They were hoisted into place by means of cranes.

The plaintiff, Warren McCollum, was Concrete's engineer in charge of construction. His duties included deciding how the work was to be done, inspecting the materials before they were installed, interpreting the blueprints and directing Concrete's workmen on the job.

When the work of building the top story of the building commenced, Concrete had no crane of its own capable of reaching to that height; accordingly, plaintiff rented a large mobile P & H crane from the defendants, Orvil Smith and Chan C. Wilson who, as partners, carried on the business of leasing construction machinery. The rental agreement was oral and, so far as the evidence shows, was simply that for $70.00 per hour defendants would supply Concrete with the crane, an operator, and an oiler.

On Sunday, the power unit for the crane was driven to the job site. There, as specified by plaintiff, it was outfitted with a boom consisting of a main section 170 feet in length, together with a jib or second section 40 feet long that extended from the far end of the main section at an obtuse angle. The line or lines used to hoist loads ran down from the tip of this latter section.

On Monday, the crane, operated by defendant's employee Edward Choy, was put to work. The building materials were heavy and bulky. Lifting them was a very delicate operation, not only because of their weight but also because of the great length of the boom and line. And unless the load was directly beneath the tip of the boom when the lift began, it would sway in a considerable arc when raised from the ground, creating a hazardous condition. Choy, being seated beside the base of the boom, was himself unable to gauge, with any degree of accuracy, the position of the boom tip with reference to the particular load. He was given this and other needed information by one of the loaders who, through the use of a series of pre-arranged signals given by hand and arm, would indicate where to move the boom, the location and position of the line and when to make a lift.

Some of the beams were forty feet long and weighed as much as 6,000 pounds. For lifting, they were attached to a sling fashioned of two cables, each bearing a hook at one end and the other fastened to the boom line. These hooks were inserted by workmen into a stirrup-like loop built into either end of a beam. After the hooks were set, the usual practice was to first raise the beam slightly so that it hung free of the ground. If the alignment with reference to the boom tip appeared correct, a signal would be given Choy to proceed, but otherwise he would be directed to lower the beam and reposition the boom.

The accident occurred on Thursday. Plaintiff was standing on the semi-trailer of a truck that had only recently brought in a load of forty-foot beams. He was helping hook them up and acting as signalman. After Choy had made some preliminary boom adjustments, plaintiff testified that he gave Choy the hand and arm signal meaning simply "ready to test, go ahead"; that Choy immediately, and without first allowing the line to be checked or receiving any clearance, commenced to make the actual lift; that the beam thereupon swung like a pendulum, striking plaintiff with great force and

---

2. The soffits were the lower segments of the composite beams upon which the joists were rested.

causing him to be violently knocked from the trailer to the ground.

■ From this evidence, taken at full value, it appears that Choy ignored or failed to correctly interpret plaintiff's signal, and took none of the usual precautions before commencing a move that was potentially harmful to plaintiff. We have no hesitancy in holding that such evidence would support a finding that Choy was negligent.

■ However, as an affirmative defense, defendants denied responsibility for their employee's acts on the ground that Choy, although in their general employ and operating their equipment when the accident happened, had ceased to be their servant and, for the time being was, with respect to the work being performed, the servant of Concrete—in short, that he was a loaned servant. If the evidence positively and unequivocally establishes that such was Choy's status, then the defendants, of course, are not responsible for the consequences of his negligent acts, for the rule is "elementary" that:

> "When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former."

Denton v. Yazoo & M. V. R. Co., 284 U.S. 305, 308, 52 S.Ct. 141, 142, 76 L.Ed. 310 (1932). But if it appears debatable that Choy was then the servant of Concrete, the question whether there was a change of masters was one of fact for the jury.

■ In deciding this issue, a factor usually considered to be controlling is the location of the power to control the servant, for responsibility is regarded as a correlative of power. The Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909); Chicago, Milwaukee & St. Paul Ry. Co. v. City of Tacoma, 7 F.2d 586 (9th Cir. 1925); Western Marine & Salvage Co. v. Ball, 59 App.D.C. 208, 37 F.2d 1004 (1930);

Nepstad v. Lambert, 235 Minn. 1, 50 N.W.2d 614 (1951); 17 A.L.R.2d 1388, 1393, § 2.

■■ But as the above cases make clear, it is not essential, in order to constitute an employee a loaned servant, that the general employer relinquish full control over his employee, or that the special employee be completely subservient to the borrower. While the latter must possess the power of "authoritative direction and control" over the employee [Standard Oil v. Anderson, supra 212 U.S. at 222, 29 S.Ct. at 252] so that his directions will have "the force of a command" [Denton v. Yazoo, supra, 284 U.S. at 310, 52 S.Ct. at 142], this authority need not extend over every incident of an employer-employee relationship, but only over the servant's performance of the particular work in which he is engaged at the time of his negligent act or omission. As the Minnesota Supreme Court declared in Nepstad v. Lambert, supra, a particularly illuminating opinion discussing this subject,

> "[T]here is nothing logically inconsistent, when using this test, in finding that a given worker is the servant of one employer for certain acts and the servant of another for other acts. Excellent examples of this are the cases which hold a machine operator performing. work for another to be the servant of the machine owner in the care and maintenance of the machine, but the servant of the borrower in the operation of it. The crucial question is which employer had the right to control the particular act giving rise to the injury. In this connection Restatement, Agency, § 227, Comment a(2), states: ' * * * Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, *as to the act in question,* he is acting in the business of and under the direction

of one or the other.' (Italics supplied.)"

■ A careful consideration of the entire record in the light of these propositions makes manifest the conclusion that Choy was the servant of Concrete, so far as the outcome of this case is concerned.

As previously noted in this opinion, defendant's agreement with Concrete was to rent the crane complete with operating personnel. Their compensation in no way depended upon how much or how little the crane accomplished, but rather upon the number of hours it was operated. They did not undertake to perform any work. What was to be done with the crane and the time that would be required to do it were matters left for Concrete to decide. Concrete, rather than defendants, had and interpreted the plans for the building. Concrete scheduled the installation of the various building components, had them hauled to the job site from time to time as needed, and Concrete regularly directed Choy precisely where to set them. The work of the crane was such that Choy was continually required to take orders from and closely follow the directions given by Concrete through plaintiff, who was in charge of the job. For example, during the progress of the work, plaintiff caused Choy to drive the mobile crane unit to several locations adjoining the structure, in order to comport with plaintiff's building schedule. He specified which particular beam or soffit should be hoisted at a given time, and not only directed Choy where to place it but required him to make nice adjustments in its position and hold it in place while it was being incorporated into the frame. In short, it nowhere appears that Concrete engaged defendants to perform a certain job, but rather that Concrete rented defendants' machine and operator in order to do some work of their own and in their own fashion; the crucial right of control over those who performed this work unmistakably rested with Concrete.

■ Plaintiff's second ground for recovery likewise lacks substantial evidentiary support. Specifically, there was no proof that at the time defendants employed Choy he was not competent to operate the crane in a reasonably safe manner or that thereafter he would be negligent; nor was there any evidence adduced which would tend in the slightest degree to then, or thereafter, forewarn defendants that Choy would probably be careless while in their employ.

Briefly, what does appear is that Choy was a crane operator by trade; that he had more than ten years' experience in that vocation, gained from continuous employment with a number of internationally known construction companies, and that he was familiar with the very type of P & H mobile crane involved in this accident, having operated them on prior jobs. Plaintiff makes much of the fact that the first day on this job Choy allowed to slip and start to settle a soffit he had hoisted and was holding, awaiting further instructions, and that on the following day Choy swung a beam above the building almost striking a workman who was standing on an inner portion of the frame. Plaintiff mentioned both matters to one of Choy's superiors. However, plaintiff's own version of these incidents makes it clear that neither incident could be fairly attributed to Choy's dereliction of duty.

In conclusion, we are fully satisfied that the trial judge correctly appraised the evidence and that his ruling was right.

The judgment is affirmed.

BROWNING, Circuit Judge (dissenting).

As the Court points out in quoting Nepstad v. Lambert, "[t]he crucial question is which employer had the right to control *the particular act giving rise to the injury.*" [1] (Emphasis added.) If

1. Restatement (Second), Agency § 227, comment a (1958) states:

"Since the question of liability is always raised because of some *specific act done,*

there was evidence from which the jury could rationally conclude that the machinery-leasing company had the right to control Choy's performance of *that* act, it was error to direct a verdict in the machinery-leasing company's favor.

Appellant's injury did not arise, as the court seems to assume, from an act relating to when, where, and for what purpose the crane was to be employed. Rather, the injury resulted from an act relating to the mechanical operation of the crane—the manner in which the crane and its crew accomplished the alignment and lifting of beams—a matter quite independent of whether the crane and its crew should be employed in moving a particular beam to a certain position on the structure at a given time. Thus, the precise question in this case is not whether the machinery-leasing company controlled the work the crane was to do, but whether there was evidence from which the jury could rationally conclude that the machinery-leasing company, rather than the construction company, had the right to direct Choy as to the manner in which the crane was operated in aligning and lifting the beams.

There was no written contract for the rental of the crane, and appellant, who entered into the oral agreement on behalf of the construction company and who would have exercised the authority to control the manner in which Choy operated the crane had it been conferred, testified directly and unequivocally that he had no such authority.[2] A contrary finding could be made only by rejecting this testimony. This alone made it im-

proper to take the case from the jury. In ruling on a motion to direct a verdict, the court must give full credence to the testimony favorable to the party opposing the motion. Galloway v. United States, 319 U.S. 372, 384, 396, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943); Hirsch v. Archer-Daniels-Midland Co., 288 F.2d 685 (8th Cir. 1961). Only the jury could weigh appellant's testimony, judge his credibility, and draw the ultimate conclusion as to crucial facts to which he testified. Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

Moreover, appellant's testimony was supported by other evidence.

Choy was in the general employ of the machinery-leasing company which paid him, assigned him to the job, and had the sole right to discipline or dismiss him. All of these factors are "useful in determining * * * whose is the power of control." Standard Oil Co. v. Anderson, 212 U.S. 215, 225, 29 S.Ct. 252, 255 (1909).

Choy was one of a crew of three employees of the machinery-leasing company who accompanied the crane and operated it. Appellant testified that another of the three (Cabral) was the general supervisor of the crane and its crew. Choy himself testified that Cabral was the "senior man" and represented the machinery-leasing company's general manager on the job. When appellant felt that Choy was operating the crane in a careless manner he directed his complaint to Cabral and to the machinery-leasing company's manager.

---

the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, *as to the act in question*, he is acting in the business of and under the direction of one or the other." (Emphasis added.)

2. At pages 152–153 of the record:

"Q (By Mr. Padgett) Did you have authority to hire and fire Choy?

"A No, sir.

"Q Did you have authority to direct him in the manner of his operation?

"A Not how he was to use the crane, no. I had no authority as to—I don't pretend to be a crane operator. It is his business as to how he runs the crane.

"Q Well, what was your authority with respect to what Choy was doing?

"A Well, I could tell him what beam to pick up, or I can indicate which pick-up, and where it was to go, that was about the extent of my authority to tell him what to do. I could tell him what I wanted done. How it was done was up to him."

The crane was a costly and complex piece of equipment; it was reasonable to suppose that the machinery-leasing company would maintain control over the physical operation of such equipment through its own employees, rather than relinquish it to a temporary renter.[3]

The fact that Choy was dependent upon signals from others in operating the crane and that employees of the construction company (including appellant) sometimes assisted the crane crew in giving such signals, does not establish that Choy was operating the crane under the control of the construction company. The Supreme Court has twice held that the giving of signals in such circumstances "is at most an example of the minimum cooperation necessary to carry out a coordinated undertaking and * * * cannot amount to control or supervision." Shenker v. Baltimore & O. R. R., 374 U.S. 1, 6, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963). As the Court said in Standard Oil Co. v. Anderson, 212 U.S. 215, 226, 29 S.Ct. 252, 256 (1909), "The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and is not enough to show that there has been a change of masters." See also Denton v. Yazoo & M. V. R. R., 284 U.S. 305, 310–311, 52 S.Ct. 141 (1932). In any event, it would be for the jury to determine whether the signals represented mere cooperation, or had the "force of a command."

Thus, there was substantial evidence that responsibility for operating the crane in a safe and proper manner remained with the crane crew as employees of the machinery-leasing company. And it follows that by granting a directed verdict the district court deprived appellant of his right to a jury trial upon a disputed issue of fact.

---

3. Restatement (Second) Agency § 227, comment c (1958), states:

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrument is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality, and these may be opposed to the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such a case there is more likely to be an intent to retain control over the instrumentality. A person who is not in such business and who, gratuitously or not, as a matter not within his general business enterprise, permits his servant and instrumentality to assist another, is more apt to intend to surrender control."