**LOUIS M. McMASTER, INC., Appellant,**

v.

**PENNSBURY VILLAGE COMPANY and Klingbeil Company, a/k/a Klingbeil, Haddox & Company.**

**No. 71–1347.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) March 23, 1972.

Decided May 5, 1972.

Kim Darragh, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellant.

Bruce G. Lynn, Porter, Stanley, Treffinger & Platt, Columbus, Ohio, for appellee.

Before SEITZ, Chief Judge, and ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Plaintiff Louis M. McMaster, Inc., agreed in writing with defendant Pennsbury Village Company ("Pennsbury") as owner and defendant Klingbeil Company ("Klingbeil") as agent to perform all necessary grading with regard to defendants' proposed Pennsbury Village project. Plaintiff was to provide all machinery for the job and to employ qualified operators. Also, plaintiff was to supervise its work. Compensation was to be on an hourly basis pursuant to a negotiated schedule of rates applicable to specific categories of equipment, op-

erators and supporting personnel. Defendant was to pay plaintiff according to monthly invoices, with ten per cent of each billing being retained until all excavation work was completed to defendants' satisfaction. It is undisputed that later, on October 29, 1964, the parties deleted this 10% provision and initialed the modification. Thereafter, each invoice was payable in full upon receipt.

Plaintiff terminated its work under the contract in March, 1966. At the time plaintiff's invoice for that month was not prepared. It was mailed to defendants in April and defendants refused to pay the balance indicated as owing. Plaintiff then filed this action. In their answer to plaintiff's complaint defendants admitted liability to plaintiff for the amount billed. But they contended that because plaintiff failed to perform the obligations of his contract in a workmanlike manner, damage totalling $55,735.24 had resulted with regard to certain living units being constructed as part of the overall project. Defendants counterclaimed against plaintiff to recover this amount. Trial was held before the district judge without a jury. At the close of the evidence the court awarded plaintiff $3,295.32 on its complaint against defendants and awarded defendants $55,735.24 on their counterclaim against plaintiff. Plaintiff appeals the award under the counterclaim.

At trial it was undisputed that defendants had incurred expenses in the amount of their counterclaim in repairing the damage sustained by various of their project buildings. Likewise, it was conceded by plaintiff that such damage had resulted from improper excavation work. The sole issue was plaintiff's responsibility for the work as performed and whether, pursuant to its contract with defendants, plaintiff was required to indemnify defendants for their loss.

Plaintiff concedes that if its ultimate undertaking with defendants obligated it, as an independent contractor, to supervise the excavation work then plaintiff is liable to defendants for amounts expended by them to repair the damaged structures. The contract provided that plaintiff was to "give . . . personal supervision to the Work." "Work" is defined by section (2) of the contract:

"The Contractor agrees, as his sole cost and expenses, to perform with speed and diligence, all of the labor and services, and to furnish all the materials, plant and equipment necessary to complete in a good, substantial, workmanlike and approved manner in accordance with the terms and provisions of the Agreement, and of the instruction of the Owner made in accordance with the Agreement all Excavation Work as per plans prepared by Burgess & Niple Ltd., Engineers. . . ."

As written this provision would appear to make patent that plaintiff contracted to accept full supervisory responsibility for "all [e]xcavation [w]ork." The only provision of the contract which plaintiff points to as indicating a contrary conclusion is the last paragraph of section 7 which provides:

"Owner agrees to pay an additional Five Dollars and Sixty Cents ($5.60) per hour for the Contractor's foreman and/or Three Dollars and Thirty-Six Cents ($3.36) per hour for the Contractor's grease-and-maintenance men *when these men are working for the Owner, provided such work has been authorized by the Job Superintendent.* (Italics plaintiff's.)

Plaintiff contends that the italicized language of this paragraph demonstrates that defendants reserved ultimate control over the operators and other workers supplied by plaintiff. We cannot accept this contention. We recognize that plaintiff's invoices, paid by defendants, evidence that defendants in fact did utilize directly the services of plaintiff's grease-and-maintenance men on occasion. However, nothing in the record permits the conclusion that these men were used in connection with the excavation work. Rather, they well could have

been employed to service equipment used for other construction aspects of defendants' project. Apparently, no foremen were "hired" by defendants under this paragraph. Nevertheless, we do not think the fact that the contract provides for the hiring of foremen by defendants necessarily compels the conclusion that defendants intended to supervise excavation. Foremen, too, could have been hired by defendants to supervise the crews of grease-and-maintenance men assigned to service equipment used other than for excavation. Absent proof that the grease-and-maintenance men billed to defendants under this paragraph in fact were not used exclusively for non-excavation purposes, we are unwilling to relieve plaintiff of its responsibility under the contract on the basis of this single paragraph.

■ In this regard it is noted that the written contract for the most part was a standardized printed agreement. Typewritten insertions interspersed throughout its length tailored the agreement to plaintiff's particular job. Plaintiff maintains that the typewritten portions should be emphasized when interpreting the contract. However, the contract in its entirety is internally consistent. In the absence of ambiguity such disproportionate emphasis would be improper. Cf. Unit Vending Corp. v. Lacas, 410 Pa. 614, 190 A.2d 298, 300 (1963).

■ An alternative position of plaintiff is that, regardless of its responsibility under the original written contract, oral modifications thereto, agreed upon by the parties simultaneously with deletion of the retainage provision, effectively relieved plaintiff from all supervisory duties with regard to excavation. According to plaintiff, oral modifications negotiated October 29, 1964, altered the existing contract to such an extent that, thereafter, it was nothing more than an equipment rental agreement. Typically, plaintiff could not be held responsible for the faulty excavation under such an arrangement. See

McCollum v. Smith, 339 F.2d 348, 351 (9th Cir. 1964). The short answer to plaintiff's contention, however, is that the written contract fails to evidence any material modifications other than with regard to the retainage provision.

If the oral modifications suggested by plaintiff in fact were negotiated they would be inconsistent with the present contract as reasonably interpreted. Neither party has acknowledged any possible problem with the parol evidence rule. Application of that principle would seem to exclude altogether plaintiff's evidence of any contemporaneous oral understanding with defendants modifying plaintiff's responsibility under the contract. However, we need not decide this appeal on that basis. The only evidence presented concerning such an oral understanding was the testimony of plaintiff's president. Yet, the district court specifically found that his testimony lacked credibility on this point. Since we are unable to conclude that this finding was clearly erroneous, the record effectively is deprived of any evidence concerning the oral modifications asserted by plaintiff. Therefore, we agree with the district court that, according to plaintiff's contract with the defendants, control over the improperly performed excavation work precipitating defendants' counterclaim rested with plaintiff.

■ Our conclusion is not affected by plaintiff's apparent suggestion that, regardless of how the contract is interpreted, the record demonstrates that defendants in fact controlled the details of excavation and, therefore, assumed responsibility for the improperly performed work. Such a contention necessarily implies that the parties by their conduct modified their written agreement. Cf. Matanuska Valley Farmers' Coop. Ass'n v. Monaghan, 188 F.2d 906, 909–910, 13 Alaska 323 (9th Cir. 1951). For, as recognized by plaintiff in its brief, the test for determining responsibility "is not whether the borrowing employer in fact exercises control but whether he has the *right* to exercise it."

524

(Italics plaintiff's). See Siidekum v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 45 A.2d 59, 61 (1946). Specifically, plaintiff points to the testimony of two witnesses who had been employees of defendants during the period when the contested excavation occurred. James Trueman, a vice-president of Klingbeil, and George Walters, one of several "site superintendents" employed by defendants, both testified to their belief that site superintendents had the right to instruct employees supplied by plaintiff as to how their particular assignments were to be done. Walters testified that he actually directed employees supplied by plaintiff as to the details of their work. The district court failed to make a specific finding concerning this testimony. And were it not for the contradictory testimony of Joseph Richards, defendant's general manager on the Pennsbury project, we might be persuaded to remand this case for findings by the district court as to whether the parties acted in such a manner as to modify the contract and transfer to defendants the supervisory authority over excavation. Richards testified, however, that superintendents were authorized by defendants only "to schedule the work, and to direct where the equipment was working, or what each subcontracted trade was doing, according to the overall master plan. . . ." This testimony supports the trial court's finding that, with regard to plaintiff's work, "[t]he only control or supervision exercised by defendants were directions by the site superintendent as to time and place of excavation, rather than as to the method of excavation." We cannot conclude on the basis of conflicting testimony that this finding by the district court was clearly erroneous. Therefore, plaintiff's final ground for recovery must fail on appeal for want of unimpeached record support.

The judgment of the district court awarding defendants $55,735.24 on their counterclaim against plaintiff will be affirmed.