848 F.2d 118
 Charles Gregory PARKER, Plaintiff-Appellant-Cross-Appellee,
v.
JOE LUJAN ENTERPRISES, INC.; Chung Kuo Insurance Company,
Ltd., Defendants-Third-Party-Plaintiffs-Appellees,
v.
ELECTRICAL CONTRACTING CORPORATION (GUAM),
Third-Party-Defendant-Appellee-Cross-Appellant.
 Nos. 87-2206, 87-2208.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 18, 1987.
Decided May 31, 1988.
 
 Gary J. Lafleur, Gayle, Teker & Schnabel, Agana, Guam, for plaintiff-appellant-cross-appellee.
 Thomas C. Sterling, Klemm, Blair, Sterling & Johnson, Agana, Guam, for defendants-third-party-plaintiffs-appellees.
 David W. Dooley, Carlsmith, Wichman, Case, Mukai & Ichiki, Agana, Guam, for third-party-defendant-appellee-cross-appellant.
 Appeal from the United States District Court for the District of Guam.
 Before SCHROEDER, BEEZER and HALL, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 This suit arose out of an accident involving injury to Charles Parker, an employee of Electrical Contracting Corporation (Guam) or ECCG. Parker fell from a "bosun's chair" elevated some sixty feet in the air while repairing communications towers on Barrigada, Guam. Joe Lujan Enterprises (Lujan) provided the winch operator and the winch truck that elevated the bosun's chair. Plaintiff-appellant Parker appeals two rulings: 1) the district court's grant of summary judgment to defendants-appellees Lujan and its insurer, Chung Kuo Insurance Co., and 2) the district court's denial of Parker's motion for leave to amend his complaint. The district court exercised jurisdiction pursuant to 48 U.S.C. Sec. 1424(b) and 28 U.S.C. Sec. 1332 (diversity). This court has jurisdiction over the appeal pursuant to 28 U.S.C. Sec. 1294(4) and 28 U.S.C. Sec. 1291.
 
 I.
 
 2
 In early 1984, ECCG had a contract to perform repair work on communications towers in Barrigada, Guam. ECCG hired Parker as part of the project, and also contracted with Lujan to provide a winch truck and operator. The truck was used to raise and lower a worker sitting in a bosun's chair, while that worker sandblasted the towers. Lujan's winch truck operator operated the winch truck while following the instructions and hand signals of ECCG personnel.
 
 
 3
 On March 26, 1984, Parker was working as a sandblaster at the project site, sitting in the bosun's chair. The winch truck was positioned at the project site by ECCG, and ECCG designed and prepared the tower rigging system used in conjunction with the winch to raise and lower the bosun's chair. A cable running off the tower broke off from a connection at the base of the tower and Parker fell approximately sixty feet to the ground, sustaining serious injuries.
 
 
 4
 Parker filed suit seeking damages for the injuries he sustained allegedly due to the negligence and inattentiveness of Lujan's winch operator. Lujan and its insurer, Chung Kuo, filed a third-party complaint for contribution against ECCG. The district court granted summary judgment in favor of Lujan and against Parker and denied Parker's motion for leave to amend his complaint. The district court also denied ECCG's motion for summary judgment on Lujan's third-party claim.
 
 II.
 
 5
 This court reviews the grant or denial of summary judgment de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). This review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). Id.
 
 
 6
 For purposes of the summary judgment motion, the parties agreed that the accident was caused by the negligence and inattentiveness of Lujan's winch operator. The district court found that there were no genuine issues of material fact with respect to this theory; consequently, it ruled as a matter of law that the borrowed servant doctrine prevented Parker's recovery against Lujan and its insurer, Chung Kuo Insurance Co. Appellant contends, however, that there were genuine issues of material fact. Appellant asserts that the primary contested issue of fact is whether the winch operators were performing their duties for the benefit of Lujan or under the control of Lujan, ECCG, or both. Appellant does not point out, however, any dispute between the parties as to this "contested" issue of fact, and we agree with the district court that the material facts concerning this issue are not in dispute.
 
 
 7
 Because the district court correctly found that no genuine issues of material fact existed, it ruled as a matter of law that the winch truck operator provided by Lujan was a borrowed servant of ECCG. The Supreme Court explained the borrowed servant doctrine in Denton v. Yazoo & M. Valley R. Co., 284 U.S. 305, 308, 52 S.Ct. 141, 76 L.Ed. 310 (1932):
 
 
 8
 "When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former."This court has recognized the borrowed servant doctrine. See United States v. Bissett-Berman Corp., 481 F.2d 764, 772 (9th Cir.1973). In McCollum v. Smith, 339 F.2d 348 (9th Cir.1964), this court wrote that "authoritative direction and control" were the critical factors by which the borrowed servant issue is to be determined. McCollum, 339 F.2d at 351 (citing Standard Oil v. Anderson, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909)).
 
 
 9
 The facts of the instant case show that ECCG possessed sufficient "authority and control" as to convert Lujan's winch operator into a borrowed servant of ECCG. It is undisputed that Lujan retained no control over its winch operator at the work site. The record shows, and these facts are not controverted by the parties, that although Lujan owned the winch truck, selected the operators, required that the truck be operated by Lujan's operator, paid the operator's wages, and retained the authority to hire and fire the operators, ECCG's personnel positioned the winch truck, coordinated the operator's actions on the job site, directed the operators when to raise and lower the bosun's chair, had the right to verbally discipline Lujan's operator, and could have but did not request the operators to perform other job related tasks at the project site. The winch truck operator apparently utilized no independent judgment; his sole responsibility was to follow the instructions of ECCG's supervisor and the man in the bosun's chair.
 
 
 10
 On these facts, we hold that the winch operator was a borrowed servant of ECCG and affirm the district court's grant of summary judgment. In McCollum v. Smith, 339 F.2d 348 (9th Cir.1964), this court affirmed a directed verdict based on the borrowed servant doctrine on facts very similar to those in the instant case. In McCollum, the defendant provided a crane and an operator to a construction company which employed the plaintiff. The operator was instructed to operate the crane in accordance with signals given by employees of the construction company. The crane operator negligently ignored or failed to correctly interpret the plaintiff's signals thereby causing plaintiff's injury. The Court ruled:
 
 
 11
 "In short, it nowhere appears that [the construction company] engaged defendants to perform a certain job, but rather that [the construction company] rented defendants' machine and operator in order to do some work of their own and in their own fashion; the crucial right of control over those who performed this work unmistakably rested with [the construction company]."
 
 
 12
 339 F.2d at 352. See United States v. N.A. Degerstrom, 408 F.2d 1130, 1133 (9th Cir.1969).
 
 
 13
 The uncontroverted facts show that ECCG possessed such authoritative direction and control of Lujan's operator as to require summary judgment as a matter of law.[1]
 
 III.
 
 14
 The denial of leave to amend a complaint after a responsive pleading has been filed is reviewed for an abuse of discretion. Klamath-Lake Pharm. v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1292 (9th Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). Leave to amend shall be freely given when justice so requires. Fed.R.Civ.P. 15(a); see, e.g., Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir.1986) (denial of motion to amend must be strictly reviewed in light of strong policy permitting amendment).
 
 
 15
 In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court....
 
 
 16
 Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 17
 Appellant argues that, applying these standards, no good reason existed for the court to deny Parker's motion to amend his complaint. Under the abuse of discretion standard, the district court's discretion cannot be reversed unless this court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1337 (9th Cir.1985).
 
 
 18
 There are numerous grounds which more than adequately support the district court's decision. First, the motion for leave to amend was untimely under the district court's scheduling order, stipulated to by appellant, in violation of the local rules.
 
 
 19
 Second, Parker failed to justify the delay in seeking leave to amend the complaint to assert an entirely new theory of liability which was inconsistent with the original complaint. The accident occurred on March 26, 1984. The original complaint was filed on November 6, 1985, and its theory of liability was the alleged inattentiveness of the winch operator. The motion for leave to amend was filed on October 23, 1986, and Parker's new theory of liability was that the winch equipment was defective in some way.
 
 
 20
 The parties do not dispute that Parker was advised of the purported defect in the winch equipment by his supervisor, Treddis Glass, in or about March 1984, two and one-half years before the motion for leave to amend. In attempting to justify this delay, counsel for appellant merely asserts that Parker either did not comprehend what Glass told him or that he forgot due to the pain and effects of his injuries. Even when appellant's counsel was informed of this "new" information in September of 1986, however, he still waited five weeks before filing his motion to amend. Therefore, it was within the trial court's discretion to disregard appellant's unsupported statements and to deny the motion.
 
 
 21
 Finally, the granting of the motion to amend would have substantially prejudiced the appellees. Not only would appellees be forced to reprepare its case for trial on an entirely different factual theory of liability, but also appellees would be compelled to conduct more off-shore discovery. In sum, it was well within the trial court's discretion to deny the motion on these bases.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Because we affirm the district court's grant of summary judgment against Parker and in favor of Lujan, Lujan's third party complaint for contribution against ECCG is moot