**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1449**

FRED LADD; LORETTA SUZANNE LADD,

              Plaintiffs - Appellants,

         v.

RESEARCH TRIANGLE INSTITUTE, a/k/a Research Triangle
Institute International, a North Carolina corporation,

              Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Terrence W. Boyle,
District Judge.   (5:06-cv-00399-BO)

Argued:  May 13, 2009                    Decided:  July 2, 2009

Before KING, SHEDD, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Lee Kofoed, Sr., THE KOFOED LAW FIRM, LLC,
Centennial, Colorado, for Appellants.   Clifton L. Brinson,
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP,
Raleigh, North Carolina, for Appellee.   **ON BRIEF:** Mark A. Ash,
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Research Triangle Institute ("RTI") contracted to rebuild municipal water and sewage facilities in Iraq following the 2003 U.S. invasion. RTI obtained Ladd's services as a civilian engineer by contract with his direct employer, Chemonics International, Inc. ("Chemonics"). Ladd was injured in Iraq while working on a project directed by RTI. He and his wife ("the Ladds") subsequently sued RTI. The district court awarded RTI summary judgment and the Ladds appeal. Because the Ladds' suit is barred by the Defense Base Act, 42 U.S.C. § 1651 ("the DBA"), we affirm the judgment of the district court.

I.

RTI contracted with the United States Agency for International Development ("USAID") to provide reconstruction services in Iraq following the 2003 U.S. invasion. RTI subcontracted with Chemonics to recruit qualified personnel. Chemonics subsequently recruited and hired Ladd, a civilian water and sewer engineer.

In October 2003, while traveling from Al Kut, Iraq, to a meeting in Noumaniya, Ladd was injured when his vehicle's left front tire blew, causing the vehicle to plunge into a canal. Ladd suffered several serious injuries as a result of the

2

accident. Despite several surgeries, Ladd requires ongoing physical, mental, and emotional care.

In October 2005, the Ladds filed a complaint in the United States District Court for the District of Colorado, where they lived, alleging that RTI failed to supply vehicles for operations in Iraq consistent with those promised during orientation; that Ladd's driver, allegedly an RTI employee, had been negligent; and that the vehicle in which Ladd had been driven was defective or in poor condition. RTI filed an answer in which it denied the Ladds' claims and raised an affirmative defense that the suit was barred under the DBA. RTI also filed a motion to dismiss or transfer in which it argued that it was not subject to personal jurisdiction in the District of Colorado. In September 2006, the District Court for the District of Colorado granted RTI's motion and transferred the case to the Eastern District of North Carolina.

In August 2007, RTI filed a motion for summary judgment arguing, among other things, that Ladd was receiving workers' compensation benefits under the DBA, which constituted his exclusive remedy. The district court awarded RTI summary judgment, finding that Ladd was a statutory employee of RTI under the borrowed servant doctrine and holding that his suit was barred under the DBA. The Ladds filed a timely notice of appeal and we have jurisdiction under 28 U.S.C. § 1291.

The Ladds argue that the district court erred in applying the borrowed servant doctrine to find Ladd was a statutory employee of RTI under the DBA.[1][2] This Court reviews an award of summary judgment de novo. E.g., Moore v. Williamsburg Reg'l Hosp., 560 F.3d 166, 171 (4th Cir. 2009).

The DBA provides that "the provisions of the Longshore and Harbor Workers' Compensation Act [33 U.S.C. 901 et seq. ("the LHWCA")] shall apply in respect to the injury or death of any employee engaged in any employment . . . under a contract

---

[1] At oral argument, the Ladds argued that the borrowed servant doctrine is an affirmative defense which RTI had failed to plead in its answer and thereby waived. RTI responded that the borrowed servant doctrine is merely a legal theory under which the DBA applies to the relationship between Ladd and RTI, and that RTI had properly pleaded the DBA as an affirmative defense in its answer. RTI also contended the DBA divests the district court of subject-matter jurisdiction over the Ladds' claims and questions relating to subject-matter jurisdiction cannot be waived.

We do not address this argument because the Ladds did not argue in the district court or on brief that the borrowed servant doctrine was an affirmative defense or that RTI had waived it through a failure to plead. Accordingly, under the well-settled rule in this Circuit, the issue is waived. E.g., United States v. Chase, 466 F.3d 310, 314 n.2 (4th Cir. 2006); Evans v. Metro. Life Ins. Co., 358 F.3d 307, 311 n.4 (4th Cir. 2004) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999)).

[2] The Ladds also appeal from the district court's denial of their motion to re-open discovery and designate an expert to testify about the condition of the vehicle's tires. Because we affirm the district court's determination that the DBA bars the Ladds' suit as a matter of law, we do not reach this issue.

4

entered into with the United States . . . where such contract is to be performed outside the continental United States . . . ." 42 U.S.C.A. § 1651(a)(4) (West 2003).  In <u>White v. Bethlehem Steel Corp.</u>, 222 F.3d 146 (4th Cir. 2000), we determined that the borrowed servant doctrine applies under the LHWCA to provide immunity from suit both to an employee's general or contract employer and to other "employers who 'borrow' a servant from" that employer.  <u>Id.</u> at 149.

> A person can be in the general employ of one company while at the same time being in the particular employ of another "with all the legal consequences of the new relation."  <u>See</u> <u>Standard Oil Co. v. Anderson</u>, 212 U.S. 215, 220 [(1909)].  In order to determine whether an employee is a borrowed servant, courts "must inquire whose is the work being performed . . . by ascertaining who has the power to control and direct the servants in the performance of their work."  <u>Id.</u> at 221-22.  The Supreme Court noted, however, the importance of "distinguishing between authoritative direction and control, and mere suggestion as to details or the necessary cooperation."  <u>Id.</u> at 222.
>      The authority of the borrowing employer does not have to extend to every incident of an employer-employee relationship; rather, it need only encompass the servant's performance of the particular work in which he is engaged at the time of the accident.  <u>See</u> <u>id.</u> at 220; <u>McCollum v. Smith</u>, 339 F.2d 348, 351 (9th Cir. 1964).  <u>When the borrowing employer possesses this authoritative direction and control over a particular act, it in effect becomes the employer.  In that situation, the only remedy of the employee is through the LHWCA.</u>
>           . . . .
>      In order to determine direction and control, a court may look at factors such as the supervision of the employee, the ability to unilaterally reject the services of an employee, the payment of wages and benefits either directly or by pass-through, or the duration of employment.  <u>Ultimately, any particular</u>

> factor only informs the primary inquiry--whether the borrowing employer has authoritative direction and control over a worker.

Id. (emphasis added).

In this case, it is clear that RTI exercised the requisite "authoritative direction and control" over Ladd. Ladd's contract with Chemonics expressly stated that, "[w]hile in Iraq, [Ladd] will report directly to RTI's Chief of Party, Peter Benedict, or any successor appointed by RTI. Mr. Benedict is responsible for monitoring employee performance under the terms of the contract." (J.A. 11.) The contract also provided that Ladd's salary was subject to approval by RTI. The relationship between Ladd and RTI was also explored in Ladd's deposition, where he stated that RTI had control over him in Iraq, that RTI had the power to have him fired, and that RTI could reassign him to different parts of Iraq.

In response to RTI's request for admissions, Ladd admitted that "he was required to report directly to RTI's Chief of Party and was to follow the instructions and orders of RTI in the performance of his work." (J.A. 249.) Further, Ladd admitted that on the day of the accident "it was RTI that ordered and arranged the trip." Id. Finally, the Ladds admitted RTI's control over Ladd in Iraq in their initial complaint, which stated that "Ladd would report directly to RTI, his salary would

be dependent upon the approval of RTI, and . . . RTI could amend the duties to be performed . . . ." (J.A. 2.)

Because the facts clearly show that RTI exercised "authoritative direction and control" over Ladd in Iraq, the district court did not err in concluding that Ladd was the borrowed servant of RTI for the purposes of fulfilling its USAID contract there. As a borrowed servant, Ladd was a statutory employee of RTI under the LHWCA and the DBA. Accordingly, the Ladds' suit is barred by the DBA as a matter of law and we affirm the judgment of the district court.

<u>AFFIRMED</u>