**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SIRA CRUZ, *Plaintiff-Appellant*, v. NATIONAL STEEL AND SHIPBUILDING COMPANY; PETERSON INDUSTRIAL SCAFFOLDING, INC., *Defendants-Appellees*, and UNITED STATES OF AMERICA, *Defendant.* | No. 17-55441 D.C. No. 3:14-cv-02956-LAB-DHB OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Submitted August 29, 2018[*]
Pasadena, California

Filed December 19, 2018

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: Kim McLane Wardlaw, Jay S. Bybee,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[**]

### Admiralty

The panel affirmed the district court's summary judgment in favor of the defendant in an admiralty action brought by an injured maritime worker.

The plaintiff was injured while working as a tank tester aboard a Navy ship that was docked for repairs. She collected workers' compensation under the Longshore and Harbor Workers' Compensation Act from her primary employer, a staffing agency, and she brought a negligence action against the general contractor that had functioned as her borrowing employer.

The panel held that the defendant general contractor was immune from suit pursuant to the "one recovery" policy at the heart of workers' compensation law. Joining other circuits, the panel held that the "borrowed employee" doctrine applies to "employees" under the Longshore Act. The worker was the defendant's borrowed employee because her work was subject to its direction and control at all times. She therefore was barred from bringing tort claims against the defendant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Preston Easley, Law Offices of Preston Easley, San Pedro, California; Dawn Schock, SK Appellate Group LLP, San Pedro, California; for Plaintiff-Appellant.

Bradley H. Pace, Philip Barilovits, and Pamela L. Schultz, Hinshaw & Culbertson LLP, San Francisco, California, for Defendant-Appellee.

---

**OPINION**

BYBEE, Circuit Judge:

In this case we are asked to determine whether a maritime worker who has collected statutory workers' compensation for her injuries may further recover against a so-called "borrowing employer." Sira Cruz suffered injuries to her ribs and lungs while working as a tank tester aboard a Navy ship that was docked for repairs. She collected workers' compensation from her primary employer, a staffing agency. Then, she brought a negligence action against general contractor National Steel and Shipbuilding Company ("Nassco") seeking recovery for the same injuries. Nassco, which had functioned as Cruz's borrowing employer for several years at the time of the accident, asserted that it was immune from suit pursuant to the "one recovery" policy at the heart of workers' compensation law. The district court granted Nassco's motion for summary judgment on these grounds. Cruz appeals from that judgment, and we affirm. In this, we join the Third, Fourth, Fifth, and Eleventh Circuits in holding that the borrowed employee doctrine applies to

"employees" under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–50.

I

Except where noted, Cruz and Nassco have stipulated to the following facts.

Nassco is a shipbuilding company that contracts with the U.S. government to build and repair Navy vessels. To carry out this work, Nassco also contracts with labor brokers, including Tradesmen International, Inc. ("Tradesmen"), for temporary personnel. The contract between Nassco and Tradesmen granted Nassco significant control over the temporary employees Tradesmen assigned to Nassco. Nassco could terminate the temporary employees at any time, Tradesmen was required to provide Nassco notice if a temporary employee resigned, and temporary employees needed to seek approval for vacation time from Nassco. Tradesmen employees assigned to Nassco received a badge bearing both companies' names enabling them to access Nassco job sites. These employees attended daily meetings led by Nassco employees who discussed task assignments. Tradesmen provided some general safety training to employees, but Nassco trained these employees on how to perform shipbuilding and ship repair roles, including "fire watch" and "tank tester." Tradesmen invoiced Nassco for its employees' services at a rate agreed upon between the companies, and Tradesmen then paid its employees a separately agreed-upon hourly rate. The contract also required Tradesmen to obtain workers' compensation coverage for each employee pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA").

Sira Cruz, a Tradesmen employee assigned to Nassco, was injured while conducting repair work on the *USS Makin Island*—a Nassco work site—on February 20, 2013. Prior to working for Tradesmen, Cruz had worked at another temporary staffing agency and did some work at Nassco on behalf of that agency. Cruz began her work for Tradesmen in October 2010. In the two years immediately preceding her injury Tradesmen assigned Cruz to work exclusively for Nassco, with the exception of one week where it assigned her to work for another Tradesmen client. In support of its motion for summary judgment, Nassco submitted an August 16, 2016 screenshot of Cruz's Facebook profile, where she listed her employer as "Nasco" [sic] from March 2008 to the present.

Cruz started her work for Tradesmen at Nassco as a fire watch. She later asked a Nassco employee to move her to the position of tank tester. After many conversations with Nassco employees about this move, Nassco informed Cruz she would become a tank tester. Cruz learned how to test tanks on the job with instructions from another Nassco employee. She has stipulated that she would not have otherwise known how to do the work because Tradesmen did not provide her with tank-testing training. Cruz attended meetings led by Nassco employees each morning, and some of her work clothing had Nassco's name on it. However, Cruz alleges that even when Nassco gave her work assignments, she controlled the details of her work and Nassco employees did not supervise or direct her.

At the time of her injury on February 20, 2013, Cruz had worked as a tank tester for at least six months on approximately eight different ships that Nassco was repairing. On that day, Nassco employees instructed her to work in a

tank on the *USS Makin Island*. Cruz fell through an access hole in the tank while descending a ladder and suffered rib fractures and a collapsed lung.

Cruz collected LHWCA benefits from Tradesmen, which had obtained LHWCA insurance coverage for her in accordance with its contract with Nassco. She then filed a complaint in admiralty in the Central District of California alleging, among other charges, that Nassco's negligence caused her injuries. Nassco moved for summary judgment. It argued that it was immune from suit in tort under the LHWCA's single-recovery provisions. The district court granted summary judgment, holding that "as a matter of law[] . . . Cruz was Nassco's borrowed employee and is barred from suing her employer under [the LHWCA]." Cruz now appeals this judgment.

II

The district court had original jurisdiction over this suit in admiralty, 28 U.S.C. § 1333, and we have appellate jurisdiction to review the district court's final decision on the merits, 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). Viewing the evidence in the light most favorable to the nonmoving party, we consider whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017).

A

The district court correctly found no genuine issue of material fact and ruled as a matter of law that Nassco was immune from Cruz's tort claims under the LHWCA, 33 U.S.C. §§ 901–50.  Enacted in 1927, the LHWCA establishes a mandatory framework for compensation of maritime employees injured on the navigable waters of the United States.  A 1972 revision to the statute expanded its coverage to injuries suffered in "any . . . adjoining area customarily used by an employer in loading, unloading, [or] repairing . . . a vessel."  LHWCA Amendments of 1972, Pub. L. No. 92-576, § 2(c), 86 Stat. 1251, 1251 (codified as amended at 33 U.S.C. § 903(a)).  When a covered employee is injured, the employer is liable regardless of fault. 33 U.S.C. § 904(b).  A general contractor is liable to the employee of a subcontractor only where the subcontractor fails to procure workers' compensation insurance or otherwise fails to pay compensation.  *See id.* § 905(a).

An injured employee may file a claim for workers' compensation benefits with the Office of Workers' Compensation Programs, which has sole authority to investigate the claim and hold a hearing, and must either reject the claim or make an award.  *Id.* § 919; 20 C.F.R. § 1.2(e).  The LHWCA fixes the amount of compensation based on the nature and extent of the injury and the employee's weekly pay rate.  *See* 33 U.S.C. §§ 906, 908–10.

When the LHWCA applies, its remedy is "exclusive and in place of all other liability of [the] employer to the employee."  *Id.* § 905(a); *see Figueroa v. Campbell Indus.*, 45 F.3d 311, 314–15 (9th Cir. 1995) (applying the LHWCA's one-recovery rule).  The Supreme Court described the

LHWCA's compensation scheme as a quid pro quo: "In return for the guarantee of compensation, the employees surrender common-law remedies against their employers for work-related injuries." *Wash. Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 931 (1984) (*superseded on other grounds by statute*, LHWCA Amendments of 1984, Pub. L. No. 98-426, 98 Stat. 1639). An employer is thus immune from any suit seeking further recovery for the same injury. *See id.*

Tradesmen, which paid Cruz's LHWCA claim, was Cruz's contractual employer at the time of her injury. However, the district court held that Nassco was legally Cruz's employer at this time under the borrowed employee doctrine and thus was entitled to assert the defense of LHWCA immunity.

B

We have long recognized the borrowed employee—traditionally, "borrowed servant" or "loaned servant"—doctrine. *Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 120 (9th Cir. 1988); *United States v. Bissett-Berman Corp.*, 481 F.2d 764, 772 (9th Cir. 1973); *McCollum v. Smith*, 339 F.2d 348, 351–52 (9th Cir. 1964). "When one person puts his [employee] at the disposal and under the control of another for the performance of a particular service . . . [the employee] is to be dealt with as [that] of the latter and not of the former." *Denton v. Yazoo & Miss. Valley R.R. Co.*, 284 U.S. 305, 308 (1932). The relationship between a borrowing employer and borrowed employee carries "all the legal consequences" of a conventional employer-employee relationship. *See id.* (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 220 (1909)). "[A]uthoritative direction and

control" are the "critical factors" by which we resolve a borrowed employee inquiry. *Parker*, 848 F.2d at 120 (citing *McCollum*, 339 F.2d at 351); *see United States v. N.A. Degerstrom, Inc.*, 408 F.2d 1130, 1133 (9th Cir. 1969) ("The critical factual inquiry in determining whether the loaned-servant doctrine should be applied is the location of the power to control the servant. . . . [R]esponsibility is regarded as a correlative of power." (quoting *McCollum*, 339 F.2d at 351)); *see also Wolsiffer v. Atlantis Submarines, Inc.*, 848 F. Supp. 1489, 1495 (D. Haw. 1994) (applying *McCollum* and also considering "whether there was a written agreement by the employers regarding the loan of the employee, who paid the employee's wages and benefits, whether the employee assented to the transfer, and the length of time of the employment").

Here, the record establishes that Nassco was Cruz's borrowing employer because her work was subject to its direction and control at all relevant times. Cruz had been "loaned" from Tradesmen to Nassco for two nearly uninterrupted years prior to her injury, and she had worked for Nassco prior to that while she was affiliated with a different temporary staffing agency. Cruz attended daily morning meetings at which Nassco employees gave her tasks to perform. On site, she wore an ID badge identifying her as a Nassco employee. Cruz became a tank tester, the job she performed on the day of her injury and for the six months prior, only because she asked a Nassco employee to promote her to the position and because another Nassco employee trained her. Conversely, Tradesmen provided her with no training or direction on how to perform this job. Nassco had the authority to terminate Cruz's temporary employment at any time, and Cruz had to seek Nassco's approval for vacation time. On the day before her injury, Nassco

employees instructed Cruz to work in the tank where she was injured.

Cruz presents no compelling argument that she was not subject to Nassco's direction and control. Although she remained on the payroll of Tradesmen, payroll status is not dispositive in borrowed employee inquiries. *See N.A. Degerstrom*, 408 F.2d at 1132–33 (affirming a district court's holding that a loader operator was the borrowed employee of the government despite being on the payroll of the plaintiff company). Her signed declaration that she subjectively considered herself a Tradesmen employee is insufficient to put the matter in controversy: the borrowed employee inquiry is objective; and this declaration made for litigation purposes contradicts Cruz's personal Facebook profile, where she listed "Nasco" [sic] as her employer from March 2008 until at least August 2016. Finally, Cruz's assertion that she "sometimes worked in the Tradesmen office" is immaterial to our conclusion that Nassco functioned as her borrowing employer while she was performing repairs on the *USS Makin Island*.

C

We next review the district court's conclusion that Nassco, as a borrowing employer, was entitled to the same immunity as a conventional employer under the LHWCA. Until now, we have never directly addressed this question. *See Burnette v. Sierra Nev. Corp.*, No. 2:14-cv-2761, 2015 WL 5475262 at *6 (D. Ariz. Sept. 18, 2015) (commenting on the lack of Ninth Circuit precedent). We now expressly hold that a borrowed employee is an "employee" and a borrowing employer is an "employer" for purposes of the LHWCA, and accordingly, a borrowed employee who has been fully

compensated under the LHWCA by any party has no further remedy for the same injury against her borrowing employer.

Sound construction of the LHWCA compels this conclusion. Congress enacted the statute's current definition of the term "employee" in 1984. LHWCA Amendments of 1984, Pub. L. No. 98-426, § 2, 98 Stat. 1639, 1639 (codified as amended at 33 U.S.C. § 902(3)). An "employee," for purposes of the statute, is "any person engaged in maritime employment . . . including a ship repairman," but excluding eight enumerated categories of individuals. 33 U.S.C. § 902(3). Those Congress excluded from employee status include, among others, secretarial and marina personnel, certain types of laborers on small vessels, and "individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of an employer . . . and (iii) are not engaged in work normally performed by employees of that employer . . . ." *Id.* § 902(3)(A)–(H).

Borrowed employees are not among the eight categories of laborers Congress chose to categorically exclude from coverage in § 902(3). Moreover, § 902(3)(D)'s exclusion of individuals (i) employed by suppliers, transporters, or vendors, (ii) temporarily doing business on the premises of an employer, and (iii) not engaged in work normally performed by employees of the employer further supports our conclusion. Section 902(3)(D) excludes only a narrow subset of borrowed employees: those who perform work for the borrowing employer distinct from the type of work that

employer's conventional employees perform.[1]  This precise language reflects a policy decision by Congress to exclude some borrowed employees—but not all. *See also id.* § 905(a) (describing the conditions under which a subcontractor's employees will be deemed employees of the contractor).

We may assume that Congress understood in 1984 that the Supreme Court had long recognized the borrowed employee doctrine and that the statute's definitions thus reflect this understanding.  *Denton*, 284 U.S. at 308; *see Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003) ("Congress is presumed to know the law and to have incorporated judicial interpretations when adopting a preexisting remedial scheme . . . .").  Thus, applying the well-recognized canon of *expressio unius est exclusio alterius*, we conclude that the LHWCA reaches borrowed employees who otherwise fall within Congress's definition of "employee." *See Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

Our conclusion places us in agreement with the other circuits to address this question. *See Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1124 (11th Cir. 2011); *White v. Bethlehem Steel Corp.*, 222 F.3d 146, 149 (4th Cir. 2000);

---

[1] Cruz, who performed the same type of work on the *USS Makin Island* as Nassco employees, does not argue that she qualifies for this exclusion.

*Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 940 (3d Cir. 1990); *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977). It is also consistent with the broader body of workers' compensation law. Borrowing employers are generally immune from borrowed employees' tort suits under various other workers' compensation schemes. *See* 1 Modern Workers Compensation § 103:30 (compiling state and federal statutes and cases to conclude that "[e]xcept when the loaned servant doctrine has been abrogated for this purpose, the loaned employee cannot maintain a tort action against the borrowing employer, even if the borrowing employer does not provide workers' compensation benefits to the loaned employee." (citations omitted)).

### III

Cruz's remaining arguments are without merit. She alleges that Nassco waived its right to assert that she was its borrowed employee through its contract with Tradesmen, citing two vague provisions of the contract which do not address the borrowed employee doctrine. Under California law,[2] "waiver is the *intentional* relinquishment of a known right *after knowledge* of the facts." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 636 (Cal. 1995) (emphasis added)

---

[2] We interpret the agreement between Nassco and Tradesmen according to California contract law. As a general contract principle, the law of the situs state applies. *See Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990). State law may apply in an admiralty case so long as it merely supplements federal maritime law and does not deprive a party of substantive admiralty rights. *Pope & Talbot v. Hawn*, 346 U.S. 406, 409–10 (1953). Waiver does not disrupt any admiralty right, and we have previously considered claims of contractual waiver while sitting in admiralty. *Dant & Russell, Inc. v. Dillingham Tug & Barge Corp.*, 895 F.2d 507, 511 (9th Cir. 1989).

(internal quotation marks and citation omitted). Cruz bears the burden to "prove [waiver] by clear and convincing evidence that does not leave the matter to speculation," and we resolve doubtful cases against the party asserting waiver. *Id.* She has not met this burden. Nothing in the contract suggests Nassco intentionally waived its right to assert the borrowed employee doctrine, and even so, a contract cannot alter the truth of an employment relationship by placing parties in different positions from those they actually held. *See Kowalski v. Shell Oil Co.*, 588 P.2d 811, 816 (Cal. 1979) (en banc) (citing *Martin v. Phillips Petroleum Co.*, 117 Cal. Rptr. 269, 271 (Ct. App. 1974)).

Cruz also argues that the district court improperly allowed Nassco to join another defendant's motion for summary judgment. This argument is irrelevant because Nassco filed its own motion for summary judgment—in which it asserted the defense of immunity under the LHWCA—and we may affirm the district court's grant of summary judgment on any ground supported by the record. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir. 2017).

IV

The LHWCA provides maritime employees one guaranteed recovery for covered injuries. Cruz received her recovery, and the district court was correct to preclude her from pursuing a second. For these reasons, the judgment of the district court is **AFFIRMED**.